## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

JOSEPHINE SHUI,

     Plaintiff,

v.

LEI WANG, HENGCHUN "HELENA"
FAN, MERYL L. UNGER, ESQ.,
THOMAS M. LOPEZ, ESQ., KATSKY
KORINS LLP and JOHN DOES (1-10),

     Defendants.

_____

Civil Action No. 2:23-cv-02620 (SRC) (CLW)

**(Returnable: July 3, 2023)**

---

## BRIEF ON BEHALF OF DEFENDANTS KATSKY KORINS LLP, MERYL L. UNGER, ESQ., THOMAS M. LOPEZ, ESQ. IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE

---

**WILENTZ, GOLDMAN & SPITZER, P.A.**
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
*Attorneys for Defendants Meryl L. Unger, Esq.,*
*Thomas M. Lopez, Esq. and Katsky Korins LLP*

*Of Counsel and On the Brief*:
    Donald E. Taylor, Esq.

*On the Brief*:
    Richard K. Wille Jr., Esq.

### *ORAL ARGUMENT IS REQUESTED*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...............................................................1

PROCEDURAL HISTORY.....................................................................2

STATEMENT OF FACTS ......................................................................3

    A.    The Parties ...........................................................................3

    B.    The LLC, The Operating Agreement, And The Business Operations ..4

    C.    Ms. Shui's Decision to Withdraw From TLG....................................7

    D.    Ms. Shui's Allegations Of Freeze-Out And Related Claims ...............9

LEGAL ARGUMENT ..........................................................................11

POINT I...............................................................................................11

    NEW JERSEY LAW APPLIES TO PLAINTIFF'S CLAIMS. ...........................11

POINT II ..............................................................................................12

    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST LAW FIRM
    DEFENDANTS FOR BREACH OF FIDUCIARY DUTY.................................12

POINT III.............................................................................................16

    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE LAW FIRM
    DEFENDANTS FOR "DIRECT ACTION ON BEHALF OF A MEMBER."...16

POINT IV .............................................................................................21

    THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND
    ABETTING OR CIVIL CONSPIRACY AGAINST THE LAW FIRM
    DEFENDANTS. .......................................................................21

    A.    Ms. Shui Has Not Stated A Viable Claim For Civil Conspiracy.........21

    B.    Ms. Shui Has Not Stated A Viable Claim For Aiding And Abetting
    Breach of Fiduciary Duty..................................................24

## TABLE OF CONTENTS (cont'd)

**PAGE**

C.      Ms. Shui Has Not Stated A Viable Claim For Aiding And Abetting Oppression. ............................................................26

POINT V ...........................................................................................................28

THE COMPLAINT FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. ...................................................28

CONCLUSION ......................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**<u>PAGE</u>**

**Cases**

*Albanese v. Lolio*,
   393 N.J. Super. 355 (App. Div. 2007)....................................................................13

*Barasch v. Williams Real Estate Co.*,
   961 N.Y.S.2d 125 (App. Div. 2013) ....................................................................20

*Bishop v. Okidata, Inc.*,
   864 F. Supp. 416 (D.N.J. 1994 ...................................................................... 29, 30

*Bostock v. High Tech Elevator Indus., Inc.*,
   260 N.J. Super. 432 (App. Div. 1992)...................................................... 18, 21, 26

*Brenner v. Berkowitz*,
   134 N.J. 488 (1993) .......................................................... 18, 21, 25, 26

*Brown v. Brown*,
   323 N.J. Super. 30 (App. Div.),
   *certif. denied*, 162 N.J. 199 (1999).......................................................................14

*Buckley v. Trenton Saving Fund Soc.*,
   111 N.J. 355 (1988) ...................................................................... 29, 30

*Chambers v. Gold Medal Bakery*,
   983 N.E.2d 983 (Mass. 2013)..............................................................................20

*City of Englewood v. Pulice*,
   A-1930-20, 2022 WL 16596187 (N.J. Super. Ct. App. Div. Nov. 1, 2022)........18

*D. & C. Textile Corp. v. Rudin*,
   246 N.Y.S.2d 813 (N.Y. 1964)...........................................................................14

*DeAngelis v. Rose*,
   320 N.J. Super. 263 (App. Div. 1999)................................................................13

*Feuer v. Merck & Co.*,
   455 N.J. Super. 69 (App. Div. 2018), *aff'd*, 238 N.J. 27 (2019) ..........................19

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Fregara v. Jet Aviation Business Jets,*
    764 F.Supp. 940 (D.N.J. 1991)................................................................29

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*,
    337 F.3d 297 (3d Cir. 2003) ................................................... 22, 23, 24

*Hedden v. Kean Univ.*,
    434 N.J. Super. 1 (App. Div. 2013).....................................................17

*Heffernan v. Hunter*,
    189 F.3d 405 (3d Cir. 1999) ..................................................... passim

*Lacy v. Cooper Hosp./Univ. Med. Ctr.*,
    745 F. Supp. 1029 (D.N.J. 1990)................................................. 29, 30

*Major League Baseball Promotion v. Colour-tex,*
    729 F.Supp. 1035 (D.N.J. 1990)..........................................................29

*Matter of Beiny* [*Weinberg*],
    129 A.D.2d 126, 517 N.Y.S.2d 474 (1st Dept. 1987).........................20

*Matter of Weinberg*,
    133 Misc.2d 950, 509 N.Y.S.2d 240 (Sur. Ct., N.Y. County 1986) ....................20

*McCarthy v. John T. Henderson, Inc.*,
    246 N.J. Super. 225 (App. Div. 1991)..................................................18

*McCormac v. Qwest Communications Intern., Inc.*,
    387 N.J. Super. 469 (App. Div. 2006)............................... 24, 25, 26, 27

*Metalsalts Corp. v. Weiss*,
    76 N.J. Super. 291 (Ch. Div. 1962)......................................................17

*Morgan v. Union County Bd. of Chosen Freeholders*,
    268 N.J. Super. 337 (App. Div. 1993)..................................................22

*O'Dowd v. Mandelbaum*,
    A-3648-12T1, 2014 WL 5482403 (N.J. App. Div. Oct. 31, 2014).............. 15, 25

*Perry v. Gold Laine, P.C.*,
    371 F. Supp. 2d 622 (D.N.J. 2005)......................................................30

# TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Petrillo v. Bachenberg,*
   139 N.J. 472 (1995) ................................................................13

*Royzenshteyn v. Pathak,*
   A-1810-19T2, 2020 WL 4528493 (N.J. Super. Ct. App. Div. Aug. 6, 2020) .....18

*SalandStacy Corp. v. Freeney,|*
   No. 11-3439, 2012 WL 959473 (D. N.J. Mar. 21, 2012) ....................................12

*Schulman v. Wolff & Samson, PC,*
   401 N.J. Super. 467 (App. Div. 2008) .......................................... 14, 25

*State Nat. Ins. Co. v. Cnty. of Camden,*
   CIV. 08-5128 NLH AMD, 2014 WL 6747093 (D.N.J. Dec. 1, 2014) ...............15

*Tarr v. Ciasulli,*
   181 N.J. 70  (2004) ................................................................22

*Thabault v. Chait,*
   541 F.3d 512 (3d Cir. 2008) ....................................................11

*Wang v. Allstate Ins. Co.,*
   125 N.J. 2 (1991) ................................................................13

*Wiatt v. Winston & Strawn LLP,*
   838 F. Supp. 2d 296 (D.N.J. 2012) .................................... 24, 25, 26, 27

*Willekes v. Serengeti Trading Co.,*
   CV137498ESMAH, 2016 WL 5334522 (D.N.J. Sept. 22, 2016) .......................12

**Statutes**

28 *U.S.C.* § 1332(a)(1) ................................................................3

28 *U.S.C.* § 1441(a) ................................................................3

28 *U.S.C.* § 1446(a) ................................................................3

42 *U.S.C.* § 1985 ................................................................23

*N.J.S.A.* 14A:5-28 ................................................................19

*N.J.S.A.* 42:2C-1 to -94 ................................................................11

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*N.J.S.A.* 42:2C-39 ...................................................................................... 3

*N.J.S.A.* 42:2C-40 .....................................................................................19

*N.J.S.A.* 42:2C-48 ..................................................................................3, 27

*N.J.S.A.* 42:2C-48(a)(5) ........................................................................ 26, 28

*N.J.S.A.* 42:2C-6 ......................................................................................11

*N.J.S.A.* 42:2C-67 ..................................................................................3, 11

**Rules**

*N.J.R.E.* 530 .............................................................................................17

Rule 12(b)(6) ............................................................................................. 3

**Other Authorities**

*Report of the New Jersey Supreme Court Special Committee*
   *on RPC 4.2* (1995)), reprinted in Kevin H. Michels, New Jersey Attorney Ethics,
   Appendix J (2022) ................................................................................18

*Restatement (Second) of Torts* ....................................................................29

*Restatement (Second) of Torts* § 46 cmt. d ............................................... 29, 30

*Restatement (Second) of Torts* § 46(1) (1965) ..............................................29

*Restatement (Second) of Torts* § 876(b) cmt. d (Am. Law Inst. 1979) ...... 25, 26, 27

*Restatement (Second) of Torts* § 890 (1979) ............................................ 25, 26, 27

*Restatement (Third) of the Law Governing Lawyers* § 96 ......................................15

*Restatement (Third) of the Law Governing Lawyers* § 96 cmt. b (Am. Law Inst.
   2000). ................................................................................................13

*RPC* 1.13 ........................................................................................ passim

*RPC* 1.13(a) ................................................................................... 13, 17

*RPC* 1.13(b) ...........................................................................................26

**TABLE OF AUTHORITIES (cont'd)**

**PAGE**

*RPC* 1.2 ..................................................................................................................13

*RPC* 4.2, §VII.........................................................................................................18

## PRELIMINARY STATEMENT

Attorneys are entitled, indeed ethically required, to zealously advocate their clients' interests. An attorney's ethical obligation to its client can only be properly discharged if attorneys are not dragged into lawsuits as alleged co-conspirators with their own clients and as "aiders and abettors" for providing legal counsel. Permitting a litigation adversary of an attorney's client to drag the attorney into the underlying dispute simply for counseling its own client would cripple an attorney's ability to represent its client, as the Rules of Professional Conduct require, and would have a chilling effect on the practice of law as a whole.

This case is an internal dispute involving claims of oppression, breach of fiduciary duty and freeze-out by a minority member of a New Jersey limited liability company ("LLC"). Reduced to its essence, the minority member signed an Operating Agreement that vests in the majority member the right and ability to direct all company decisions, and the minority member does not like it. She has alleged that the business decisions that the majority member has made have "oppressed" her and are in breach of the majority member's fiduciary duty.

In a transparent attempt to "turn up the temperature" of the dispute, the minority member has taken the unsupported and unsupportable step of joining the LLC's attorneys as alleged co-conspirators for giving legal advice to the majority member that controls the company's decisions, and for "aiding and abetting" the

1

alleged wrongs of the majority member.  That is, the LLC's law firm and its individual lawyers were sued as conspirators for consulting with and counseling those members charged under the Operating Agreement with running the LLC.

New Jersey law is clear that corporate counsel is entitled, and in fact required, to represent the interests of its corporate client without fear that it will be dragged into a lawsuit for conspiring with its own client or aiding and abetting the client based on the advice that it gives.

Accordingly, Plaintiff has failed to state a viable claim for relief against the Defendants Katsky Korins, LLP, or its individual partners, Meryl L. Unger, Esq, and Thomas M. Lopez, Esq. (together, the "Law Firm Defendants"), and the claims asserted against them should be dismissed with prejudice.

## PROCEDURAL HISTORY

On March 17, 2023, Plaintiff Josephine Shui ("Plaintiff" or "Ms. Shui") sued Defendants Lei Wang ("Ms. Wang") and Hengchun "Helena" Fan ("Ms. Fan," and together with Ms. Wang, the "Shareholder Defendants"), and Law Firm Defendants (sometimes collectively with Shareholder Defendants, the "Defendants"), in the Superior Court of New Jersey.

On May 12, 2023, Ms. Shui filed an Amended Complaint against Defendants alleging eight causes of action:  (1) breach of contract and specific performance of the Operating Agreement (against Shareholder Defendants only); (2) shareholder

oppression pursuant to *N.J.S.A.* 42:2C-48 (against Shareholder Defendants only); (3) direct action to enforce member rights pursuant to *N.J.S.A.* 42:2C-67 (against all Defendants); (4) breach of standards of conduct for members pursuant to *N.J.S.A.* 42:2C-39 (against Shareholder Defendants only); (5) breach of fiduciary duty (against all Defendants); (6) civil conspiracy/aiding and abetting of oppression and breach of fiduciary duty (against all Defendants); (7) breach of the implied covenant of good faith and fair dealing (against Shareholder Defendants only); and (8) intentional infliction of emotional distress (against all Defendants).  See Amended Complaint ("*Compl.*"), ¶¶ 74-116.

On May 15, 2023, Defendants removed the action to the United States District Court for the District of New Jersey based upon diversity of citizenship pursuant to 28 *U.S.C.* § 1332(a)(1), 28 *U.S.C.* § 1446(a) and 28 *U.S.C.* § 1441(a).

The Law Firm Defendants move to dismiss the Complaint as to them for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## STATEMENT OF FACTS

The factual recitation is derived from the factual allegations of the Complaint, which the Law Firm Defendants accept solely for the purposes of this motion.

### A. **The Parties**

Ms. Shui, Ms. Wang, and Ms. Fan are the only members in The Lotus Group, LLC ("TLG"), a New Jersey LLC with a principal business address located in New

#13850664.2

Jersey. *Compl.* ¶ 4. TLG is a boutique employment agency and recruiting firm specializing in the placement of personnel in the biometrics field. *Compl.,* ¶ 9. TLG primarily serves the pharmaceutical industry. *Ibid.*

Defendants Unger and Lopez are attorneys employed by Defendant Katsky Korins, LLP. *Id.* ¶ 5. The Law Firm Defendants did not represent TLG or any of its members when TLG was formed or when its Operating Agreement was drafted or executed. *Ibid.* Since their retention by TLG, the Law Firm Defendants have served and continue to serve as company counsel. *Ibid.*; *see id.* ¶ 32. The Law Firm Defendants provide legal advice and counsel to those charged with running TLG with regard to its governance and operations. *Id.* ¶ 7.

**B. The LLC, The Operating Agreement, And The Business Operations**

A decade ago, and long prior to the Law Firm Defendants' retention, on or about May 1, 2013, Ms. Shui, Ms. Wang and Ms. Fan executed an Operating Agreement for TLG (the "Operating Agreement") which defined the members' respective rights and obligations in connection with the business operations of TLG. *Id.* ¶ 11. Pursuant to the Operating Agreement, ownership in TLG is 51% to Ms. Wang, 37% to Ms. Shui and 12% to Ms. Fan. *Id.* ¶ 12. As Ms. Shui acknowledges in her Complaint, nearly every decision requiring a vote of the members is, according to the Operating Agreement, by a simple majority. *Ibid.* Thus, Ms. Wang has the contractual authority under the Operating Agreement executed by all of the members

#13850664.2

to direct virtually all business affairs of TLG.  *Ibid.*  Ms. Wang is entitled to speak for TLG as to every significant decision affecting its management and affairs.  *Ibid.*

The Operating Agreement specifically addresses how a member may withdraw from TLG.  It permits the withdrawing member to sell her membership interest to third party, subject to a right of first refusal of the other members.  *Id.* ¶ 14.  The Operating Agreement provides the members the right, but not the obligation, to purchase a withdrawing member's interest.  *Ibid.*  The Operating Agreement further defines how the purchase price is determined absent a third party offer.  *Ibid.*  This provision was later amended by a First Amendment to the Operating Agreement (the "First Amendment") to adopt an appraisal process to determine the buy-out price in the event of purchase of a member's interest by the other members.  *Id.* ¶ 26-27.

The Operating Agreement states that each member is entitled to access to the LLC's "books and records."  *Id.* ¶ 13.  The Complaint alleges that the LLC's "books and records" would include confidential communications between the LLC's attorneys and those members charged with directing its affairs involving an intra-company dispute with a member.  *Ibid.*  The Complaint does not reference any provision of the Operating Agreement that defines the "books and records of the company" to include the privileged communications with corporate counsel regarding a minority member's allegations of intra-company wrongdoing.  *See ibid.*

The Complaint alleges that each member was to be a managing member with an annual salary "not to exceed $1,000,000." *Id.* ¶ 17. As TLG was a service business start-up, the members agreed to forgo salaries. *Ibid.* Ms. Shui does not allege that the parties' agreement to forgo salaries was ever amended or modified by the members. *See generally Compl.*

The Complaint alleges that Ms. Shui and Ms. Fan were involved in recruiting, and Ms. Wang was involved in client development. *Id.* ¶ 18. Ms. Shui and Ms. Wang were to share operations and management responsibilities. *Ibid.* Ms. Fan, who had elected to work part-time at the outset, was to assume some of those responsibilities if she commenced working full-time. *Ibid.* The members agreed to forego salaries for these operations and management responsibilities, relying upon commissions and distributions from the business as their sole sources of business income. *Ibid.*

Ms. Shui alleges that she was tasked with reviewing contracts, handling banking, developing and implementing TLG's infrastructure, human resources, training, securing health insurance and other employee benefits, and choosing and setting up payroll systems and applicant tracking procedures. *Id.* ¶¶ 19-21. Ms. Shui claims that Ms. Wang and Ms. Fan focused on commission-earning tasks while Ms. Shui built and managed the administrative processes of the business through non-commission-earning tasks. *Id.* ¶ 21. The Complaint alleges that as the business became profitable, Ms. Wang and Ms. Fan earned more commissions than Ms. Shui

6

was able to earn.  *Id.* ¶ 22.  Ms. Shui requested that the Operating Agreement be amended to provide her with a salary for her operations and management work.  *Ibid.* Ms. Wang, who possessed the contractual authority to make such decisions for the company, refused.  *Ibid.*

The Complaint further alleges that tensions developed between Ms. Shui and the other members over various human resources issues.  *Id.* ¶ 30.  There is no allegation that the Law Firm Defendants represented TLG at the time these human resources issues were raised.  *See generally, Compl.*

In or about July 2021, Ms. Wang, as majority member with the contractual authority to direct the affairs of TLG, retained Defendant Unger and Defendant Katsky Korins as TLG's corporate counsel.  *Id.* ¶ 32.

The Complaint alleges that in the summer of 2021, TLG engaged a broker to assist the company in seeking a potential buyer of TLG, resulting in at least three preliminary offers.  *Id.* ¶ 34.  Those offers, so the allegations go, established a fair market value for the company.  *Ibid.* The Complaint alleges that Ms. Wang controlled the process, chose the broker, and that her actions supposedly impaired TLG's ability to find a buyer and consummate a deal.  *Ibid.*

### C. <u>Ms. Shui's Decision to Withdraw From TLG</u>

In February 2022, Ms. Shui approached Ms. Wang and Ms. Fan with a request that they develop a plan for her exit the LLC within the next year or so.  *Id.* ¶ 35.

#13850664.2

The parties were unable to reach agreement on a price at which to buy out Ms. Shui's interest. *Id.* ¶ 36. Ms. Shui alleges that Ms. Wang and Ms. Fan utilized Ms. Wang's majority interest and contractual control over the business to attempt to force Ms. Shui to accept a low buy-out. *Ibid.*

Ms. Shui hired her current counsel to coerce a sale of her interest in TLG to TLG or its other members. *Id.* ¶¶ 37, 49. The Complaint alleges that Defendant Unger and Katsky Korins, as TLG company counsel, advised Ms. Shui's attorney that the company would commence the appraisal process set forth in the First Amendment, but that Ms. Wang and Ms. Fan, through their own, separate, personal counsel, advised Ms. Shui's counsel that they did not intend to purchase Ms. Shui's membership interest and thereby declined to exercise their right of first refusal, freeing Ms. Shui to sell her membership interest to a third party. *Id.* ¶¶ 38, 40.

The Complaint claims that the Law Firm Defendants interpreted Ms. Shui's exercise of her withdrawal right as evidencing her intent to unconditionally withdrew as a member of TLG. *Id.* ¶ 42. According to Ms. Shui, the Law Firm Defendants took its direction from Ms. Wang, the majority member with the contractual right to give such direction, to provide the company's position as to this membership dispute. *Ibid.* The Complaint alleges that the Law Firm Defendants failed to conduct an internal investigation of Ms. Shui's complaints prior to accepting direction from the member with the authority to give it. *Id.* ¶ 43.

The Complaint alleges that after Ms. Shui retained her current counsel to protect her interests in what she describes as an "intermember dispute" regarding her desire to withdraw from and sell her membership interest, Ms. Wang allegedly denied Ms. Shui access to TLG's bank records and impeded her ability to perform administrative and human resources work on behalf of TLG.  *Id.* ¶ 44.

### D. Ms. Shui's Allegations Of Freeze-Out And Related Claims

Ms. Shui alleges that she has been "frozen" out of TLG, and has been denied access to the legal advice about her allegations that the Law Firm Defendants provided to TLG.  *Id.* ¶ 45.  Ms. Shui alleges that Ms. Wang directed the TLG administrative staff to deny Ms. Shui business information.  *Id.* ¶ 47.  She further claims that Ms. Wang has ceased efforts to sell TLG business without consulting with Ms. Shui.  *Id.* ¶ 46.  Ms. Shui does not claim that she has a right as a minority member under the company's governing documents to control or direct whether to sell of TLG.  *See ibid.*  Nor does she allege that the prospective sale of TLG has any bearing on her right to sell her interest in TLG under the terms of the Operating Agreement as amended.  *See ibid.*

Ms. Shui alleges that in a March 17, 2023 email to Ms. Shui's attorney, Defendant Unger requested that Ms. Shui not disclose company information to any third parties.  *Id.* ¶ 49.  The Complaint further alleges that the Law Firm Defendants advised her counsel that because Ms. Shui had "'assumed a position adverse to' TLG

when she engaged counsel in connection with her withdrawal and buyout rights"
Ms. Shui was not entitled to communications and legal advice from the Law Firm
Defendants to the majority member with regard to those matters in dispute. *Id.* ¶ 52.
The Complaint alleges that Ms. Shui, as a minority member, is entitled to know the
advice provided by the Law Firm Defendants to the company with regard to the
company's rights and obligations regarding the allegations made by Ms. Shui.  *Id.*
¶ 52.  Ms. Shui does not allege that as a minority member, she has any control over
the legal position of TLG or on how the company should act on any legal advice
provided to it particularly as to the accusations that Ms. Shui has lodged against the
company's controlling member. *See generally, Compl.*

As against the Law Firm Defendants, Ms. Shui alleges that they: (1) took
direction from the majority members of TLG with regard to the companies' course of
action and legal positions, *id*. ¶¶ 33, 43-44, 48-50, 56, 59-61; (2) denied Ms. Shui
access to privileged communications it had with the company regarding Ms. Shui's
allegations, *id*. ¶¶ 13, 45, 53; (3) advised Ms. Shui' attorney that Ms. Shui's
allegations were adverse to the company's interests, *id*. ¶¶ 41, 51-53; and (4) provided
legal advice to TLG (*i.e.*, "conspired" with their client) that, in Ms. Shui's view, is
harmful to her and the business, *id*. ¶¶ 48, 58.  The Complaint alleges that the Law
Firm Defendants "aided and abetted the oppressions and breaches of fiduciary duty
on the part of Wang and Fan," and conspired with their client "to inflict a wrong

10

against Shui." *Id*. ¶¶ 102, 105.  Ms. Shui also alleges that the Law Firm Defendants intentionally inflicted emotional distress upon her by its legal advice to TLG.  *Id*. ¶¶ 110-116.

The Complaint alleges four (4) causes of action against the Law Firm Defendants for simply counselling its client:  (1) "direct action to enforce member rights" pursuant to *N.J.S.A.* 42:2C-67 (Third Count); (2) breach of fiduciary duty (Fifth Count); (3) civil conspiracy/aiding and abetting of oppression and breach of fiduciary duty (Sixth Count); and (4) intentional infliction of emotional distress (Eighth Count).  Each claim fails as a matter of law.

## LEGAL ARGUMENT

### POINT I

### NEW JERSEY LAW APPLIES TO PLAINTIFF'S CLAIMS.

"It is well established that in a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern each of the issues of a case." *Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008).

Under New Jersey's Revised Uniform Limited Liability Company Act, *N.J.S.A.* 42:2C-1 to -94, New Jersey law governs:  (1) "[t]he internal affairs of a limited liability company"; and (2) "[t]he liability of a member as member and a manager as manager for the debts, obligations, or other liabilities of a limited liability company." *N.J.S.A.* 42:2C-6.

#13850664.2

TLG is a New Jersey LLC. *Compl., ¶4.* Thus, New Jersey law applies to this intra-company dispute.

## POINT II

## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST LAW FIRM DEFENDANTS FOR BREACH OF FIDUCIARY DUTY.

Ms. Shui asserts that the Law Firm Defendants owed her a fiduciary duty to "refrain from engaging in conduct designed to assist Wang and Fan in their efforts to oppress Shui and deprive her of her rights as a member in TLG," and breached that alleged duty. *Compl.* ¶¶ 96-97. The Law Firm Defendants represent TLG; Ms. Wang and Ms. Fan have and had their own counsel. As majority members of TLG, including Ms. Wang as 51% member, had the right and duty under the Operation Agreement to direct its affairs. As the majority member, Ms. Wang was TLG's point of contact.

To state a claim for breach of fiduciary duty, a plaintiff must allege: "(1) the existence of a fiduciary relationship between the parties; (2) the breach of a duty imposed by that relationship; and (3) damages or harm to the plaintiff caused by said breach." *Willekes v. Serengeti Trading Co.*, CV137498ESMAH, 2016 WL 5334522, at *9 (D.N.J. Sept. 22, 2016) (*citing SalandStacy Corp. v. Freeney*, No. 11-3439, 2012 WL 959473, at *12 (D. N.J. Mar. 21, 2012) (citations omitted)). "The determination of any duty is a question of law for the court." *DeAngelis v. Rose*,

320 N.J. Super. 263, 277 (App. Div. 1999) (citing *Petrillo v. Bachenberg*, 139 N.J. 472, 479 (1995)); *see Wang v. Allstate Ins. Co.*, 125 N.J. 2, 15 (1991) ("The question of whether a duty exists is a matter of law properly decided by the court, not the jury, and is largely a matter of fairness or policy.")

Attorneys must be free to advise clients without fear of being dragged into a client's underlying dispute. "The right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns." *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999). "Generally, an attorney owes a duty only to his or her client, and the client is identified in the retainer agreement." *Estate of Albanese v. Lolio*, 393 N.J. Super. 355, 368 (App. Div. 2007) (citing *RPC* 1.2).

"By representing the organization, a lawyer does not thereby also form a client-lawyer relationship with all or any individuals . . . who direct its operations or who have an ownership or other beneficial interest in it, such as its shareholders." *Restatement (Third) of the Law Governing Lawyers* § 96 cmt. b (Am. Law Inst. 2000). This maxim is incorporated into the New Jersey Rules of Professional Conduct: "A lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents." *RPC* 1.13(a).

#13850664.2

Attorneys are not liable to third parties for the conduct of their clients even if the clients are acting upon the attorney's advice. "Public policy requires that attorneys . . . shall be free to advise their clients without fear that the attorneys will be personally liable to third persons if the advice the attorneys have given to their clients later proves erroneous." *D. & C. Textile Corp. v. Rudin*, 246 N.Y.S.2d 813, 817 (N.Y. 1964).

Under New Jersey law, the company attorney does not owe a separate fiduciary duty to a minority member of a closely held company. *Schulman v. Wolff & Samson, PC,* 401 N.J. Super. 467, 478 (App. Div. 2008). In *Schulman*, minority shareholders of a closely held corporation sued the corporation's counsel for breach of fiduciary duty for assisting the majority shareholders in an alleged scheme to deprive them of their interests in the corporation. *Id.* at 470-71. Finding "no New Jersey authority for the proposition that defendants owed a separate, independent fiduciary duty to them as individual minority shareholders … ," the Appellate Court held that "[s]uch a claim is a derivative claim, not an individual claim made by a particular shareholder and based upon some particularized fiduciary obligation to that shareholder." *Ibid* (citing *Brown v. Brown*, 323 N.J. Super. 30, 36 (App. Div.), *certif. denied*, 162 N.J. 199 (1999) (defining and distinguishing individual shareholder claims from derivative claims even in the context of a closely-held corporation)). Holding that a "plaintiffs' breach of fiduciary duty claim . . . that

14

[corporate counsel] breached their fiduciary duties to [the closely held corporation] by aiding and assisting the majority shareholders, furthering their self-interests to the corporation's detriment" was not "based upon some particularized fiduciary obligation to that shareholder," the Appellate Court rejected the proposition that such a fiduciary duty to a minority shareholder exists. *Ibid.*

More recently, this Court cited the holding of the New Jersey Appellate Division reaffirming that "claims by non-clients against attorneys are permitted sparingly," and that there is a "high threshold in suits brought by non-clients against attorneys." *State Nat. Ins. Co. v. Cnty. of Camden*, CIV. 08-5128 NLH AMD, 2014 WL 6747093, at *3 (D.N.J. Dec. 1, 2014) (citing *O'Dowd v. Mandelbaum*, A-3648-12T1, 2014 WL 5482403, at *5 (N.J. App. Div. Oct. 31, 2014)).

In *O'Dowd*, the New Jersey Appellate Division addressed whether corporate counsel owed a fiduciary duty to a member of a closely held corporation by virtue of his membership in the company. *O'Dowd*, 2014 WL 5482403, at *5. The panel, citing *Restatement (Third) of the Law Governing Lawyers* § 96 and *RPC* 1.13, held that the "plaintiff would not become the Firm's client, and the Firm would not owe him a duty of care by virtue of his membership in the company." *Ibid.* The Appellate Court further noted that because the minority member "had placed himself in an adversarial position" to the company, the firm could not have simultaneously served both the company and the adverse minority member. *Ibid.*

15

Here, Ms. Shui does not allege that she retained the Law Firm Defendants to represent her at any time.  She has and had her own lawyer.  The Law Firm Defendants, as corporate counsel to TLG, owed a fiduciary duty to TLG alone. Pursuant to TLG's Operating Agreement, which Ms. Shui signed, Ms. Wang had the authority to direct the business affairs of TLG, and had the authority to communicate with the Law Firm Defendants on behalf of TLG.  As a matter of law, Ms. Shui has failed to allege a cognizable fiduciary duty that the Law Firm Defendants owed her and breached.

Accordingly, as New Jersey law does not recognize a cause of action against corporate counsel for breach of a fiduciary duty allegedly owed to a minority member of a closely held company, Ms. Shui has failed to state a claim for which relief can be granted against the Law Firm Defendants in the Fifth Count.

## POINT III

### THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE LAW FIRM DEFENDANTS FOR "DIRECT ACTION ON BEHALF OF A MEMBER."

Ms. Shui alleges that she "has been denied access to information essential both to her ability to continue to serve in her role within TLG and to her ability to solicit third-party purchasers for her interest in TLG" and has been cut off from company counsel by Ms. Wang, Ms. Fan and the Law Firm Defendants, "who have deprived her of her right to know and understand the advice being given to TLG by

the [Law Firm] Defendants in their alleged capacity as company counsel." *Compl.*
¶ 41. Ms. Shui further asserts that "despite repeated demand, Shui has been frozen
out of, and denied access to, any and all legal communications and advice provided
to TLG by the [Law Firm] Defendants over the past several years …." *Compl.* ¶ 45.

"[T]he attorney-client privilege generally applies to communications (1) in
which legal advice is sought, (2) from an attorney acting in his capacity as a legal
advisor, (3) and the communication is made in confidence, (4) by the client."
*Hedden v. Kean Univ.*, 434 N.J. Super. 1, 10 (App. Div. 2013) (citing *Metalsalts
Corp. v. Weiss*, 76 N.J. Super. 291, 297 (Ch. Div. 1962)). Only the client, as the
holder of the privilege, may waive the privilege and disclose the
communication. *N.J.R.E.* 530. The attorney cannot waive the privilege that its client
possesses and has no duty to anyone other than its client as to privileged
communications. *Ibid.*

The New Jersey Rules of Professional Conduct state in pertinent part:

(a) A lawyer employed or retained to represent an organization
*represents the organization as distinct from its directors, officers,
employees, members, shareholders or other constituents*. For the
purposes of RPC 4.2 and 4.3, however, *the organization's lawyer shall
be deemed to represent not only the organizational entity but also the
members of its litigation control group*.

*N.J. Rules of Professional Conduct* ("RPC") R. 1.13 (emphasis added).

Under *RPC* 1.13(a), an individual is part of the litigation control group if he
is a current employee "responsible for, or significantly involved in, the

determination of the organization's legal position." *City of Englewood v. Pulice*, A-1930-20, 2022 WL 16596187, at *4 (N.J. Super. Ct. App. Div. Nov. 1, 2022) (citing *Report of the New Jersey Supreme Court Special Committee on RPC 4.2* (1995)), reprinted in Kevin H. Michels, New Jersey Attorney Ethics, Appendix J (2022). The New Jersey Supreme Court's report on *RPC* 4.2, §VII, "instructs us that membership in the litigation control group is a fact-sensitive issue, and the key inquiry is the employee's role in determining the organization's legal position." *Ibid.*

The New Jersey Supreme Court has held that "because the majority has the controlling interest, it has the power to dictate to the minority the manner in which the corporation is run." *Brenner v. Berkowitz*, 134 N.J. 488, 505 (1993); *see also Bostock v. High Tech Elevator Indus., Inc.*, 260 N.J. Super. 432, 443-44 (App. Div. 1992) (same).

*RPC* 1.13 "does not specifically provide for any exceptions simply because the corporation is closely held." *McCarthy v. John T. Henderson, Inc.*, 246 N.J. Super. 225, 230 (App. Div. 1991) (New Jersey courts have rarely "disregarded the corporate form and determined that the principals of the corporation were indistinguishable from the corporation itself"); *see also Royzenshteyn v. Pathak*, A-1810-19T2, 2020 WL 4528493, at *5 (N.J. Super. Ct. App. Div. Aug. 6, 2020) (declining "to accept that shareholders in a closely held corporation hold the [attorney-client] privilege individually and distinctly from the corporate entity.").

*N.J.S.A.* 42:2C-40, which governs the "Rights of members, managers and dissociated members to information" relating to limited-liability companies, states:

> a. In a member-managed limited liability company, the following rules apply:
>
> . . . .
>
> (2) *The company* shall furnish to each member:
>
> (a) *without demand*, any information concerning the company's activities, financial condition, and other circumstances which the company knows and *is material to the proper exercise of the member's rights and duties under the operating agreement or this act*, *except* to the extent the company can establish that it reasonably believes *the member already knows the information*; and
>
> (b) *on demand*, *any other information* concerning the company's activities, financial condition, and other circumstances, except to the *extent the demand or information demanded is unreasonable or otherwise improper under the circumstances*.
>
> [*N.J.S.A.* 42:2C-40 (emphasis added.)]

"The phrase 'books and records of account' does not encompass any and all records, books, and documents of a corporation." *Feuer v. Merck & Co.*, 455 N.J. Super. 69, 78 (App. Div. 2018), *aff'd*, 238 N.J. 27 (2019). Nothing within the New Jersey Revised Uniform Limited Liability Company Act expressly provides that an LLC member's entitlement to access the company's books and records includes the right to know the legal advice of corporate counsel to those in the litigation control group that direct the company's legal position. *See N.J.S.A.* 42:2C-40. The analogous provision to *N.J.S.A.* 42:2C-40 in the statutes governing corporations, *N.J.S.A.* 14A:5-28, similarly does not provide that the right to access books and

19

records includes the right of minority shareholders to know the advice of corporate counsel given to those in the litigation control group.

We have found no New Jersey authority that would permit Ms. Shui to waive or pierce TLG's privilege relating to the advice of the Law Firm Defendants by virtue of her capacity as a minority member of TLG. *Compl.* ¶ 13. Other courts addressing this issue have held that even the "*director* of a corporation 'should not be allowed to use [her] corporate position to waive the privilege that attaches to the corporation in a litigation relating to [her] own rights or in which [she] is asserting claims that are or may be adverse to the corporation.'" *Barasch v. Williams Real Estate Co.*, 961 N.Y.S.2d 125, 127–28 (App. Div. 2013) (citing *Matter of Weinberg*, 133 Misc.2d 950, 952, 509 N.Y.S.2d 240 [Sur. Ct., N.Y. County 1986], *mod. sub nom. Matter of Beiny* [*Weinberg*], 129 A.D.2d 126, 517 N.Y.S.2d 474 [1st Dept. 1987]); *see also Chambers v. Gold Medal Bakery,* 983 N.E.2d 983 (Mass. 2013) (reversing order compelling production of privileged communications between corporate counsel and one faction of directors/shareholders to another director/shareholder whose interests became adverse to the corporation). This result is consistent with the foregoing New Jersey RPCs, which expressly entitle the business entity—not its members outside of the control group—to exercise or waive attorney-client privilege as it relates to its corporate counsel. *See RPC* 1.13.

Simply stated, the Law Firm Defendants do not take direction from Ms. Shui as a minority member of TLG and owe her no independent duty to provide any of the information she requests. *See RPC* 1.13; *Brenner*, 134 N.J. at 505; *Bostock*, 260 N.J. Super. at 443-44. Indeed, the Law Firm Defendants are precluded by the attorney client privilege from providing her any such information. Whatever statutory or contractual entitlement Ms. Shui may have to company information is owed by the company and the company alone, not its counsel.

Accordingly, Ms. Shui has failed to state a claim for which relief can be granted against the Law Firm Defendants in her Third Count for "Direct Action on behalf of a Member to Enforce her Rights.

<b><u>POINT IV</u></b>

<b>THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING OR CIVIL CONSPIRACY AGAINST THE LAW FIRM DEFENDANTS.</b>

The Complaint alleges that the Law Firm Defendants "aided and abetted the oppressions and breaches of fiduciary duty on the part of Wang and Fan," and engaged in a civil conspiracy "to inflict a wrong against Shui." *Compl.* ¶¶ 102, 105.

**A. <u>Ms. Shui Has Not Stated A Viable Claim For Civil Conspiracy.</u>**

A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong

21

against or injury upon another, and an overt act that results in damage." *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993); *see also Tarr v. Ciasulli*, 181 N.J. 70, 84-85 (2004).

Under the "intra-corporate conspiracy doctrine," an entity cannot be held liable for conspiring with one who acts as its agent—especially its attorney. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Heffernan*, 189 F.3d at 413); *see Heffernan*, 189 F.3d at 413 (3d Cir. 1999) ("The right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns.").

A conspiracy between a corporation and its agent may exist only "if the officer is acting in a personal, as opposed to official, capacity"—that is, "when the employees have acted for their ***sole*** personal benefit." *Gen. Refractories Co.*, 337 F.3d at 313 (emphasis added). "[T]he mere fact that attorneys have 'mixed motives,' such as 'enhancing' their reputation by aggressive representation, does not remove their conduct from the scope of the agency." *Ibid.* "[T]he policy reasons for applying the intra-corporate conspiracy ban are 'even more compelling' in the attorney-client context than in the 'corporate field,' given that '[c]ounsels' conduct within the scope of representation is regulated and enforced by disciplinary bodies established by the courts." *Ibid.* (quoting *Heffernan*, 189 F.3d at 413).

22

In *Gen. Refractories Co.*, the Third Circuit affirmed a District Court decision dismissing common law civil conspiracy claims against corporate counsel because the plaintiff "fail[ed] to point to any part of its Complaint containing allegations that the attorney appellees acted outside of their scope of representation, or allegations from which this even could be inferred." *Id.* at 314. The Third Circuit rejected plaintiffs argument that "outrageous" conduct by corporate counsel should be considered to fall outside the scope of their representation, holding "[t]he challenged activity may violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge." *Ibid.* (quoting *Heffernan*, 189 F.3d at 413).

In *Heffernan*, which reached the same conclusion in rejecting a claim that an attorney conspired with his client to violate the plaintiff's civil rights brought pursuant to 42 *U.S.C.* § 1985, the Third Circuit reasoned that "[s]imply because a lawyer's conduct may violate the rules of ethics does not mean that the conduct is actionable, in damages or for injunctive relief." *Heffernan*, 189 F.3d at 413. Rather, "[t]he offended third party has a remedy under state law through court imposed sanctions or reference to state disciplinary bodies." *Ibid.*

Similarly here, as in *Gen. Refractories Co.* and *Heffernan*, Ms. Shui has failed to allege the Law Firm Defendants acted outside the scope of the "attorney-client relationship" with TLG and for "their *sole* personal benefit." *See Gen. Refractories*

*Co.*, 337 F.3d at 313 (emphasis added); *Heffernan*, 189 F.3d at 413.  Nor can such an allegation plausibly be inferred from the Complaint.  *See Gen. Refractories Co.*, 337 F.3d at 314.  Ms. Shui has not alleged that the Law Firm Defendants acted for their sole personal benefit when they provided TLG the "independent and zealous counsel" it is entitled to, a right that "is at the heart of our adversary system and, indeed, invokes constitutional concerns."  *Heffernan*, 189 F.3d at 413.

Accordingly, Ms. Shui has failed to state a claim for which relief can be granted against the Law Firm Defendants for civil conspiracy with for counseling those charged with directing the affairs of the company.

### B. Ms. Shui Has Not Stated A Viable Claim For Aiding And Abetting Breach of Fiduciary Duty.

"To establish a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege: (1) a breach of fiduciary duty; (2) the defendant's knowledge of and substantial assistance in that breach; and (3) damages resulting from the breach."  *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 307 (D.N.J. 2012) (citing *McCormac v. Qwest Communications Intern., Inc.*, 387 N.J. Super. 469, 481–83, 904 (App. Div. 2006).  "New Jersey law require[s] that a defendant "knowingly" aid and abet a breach of fiduciary duty . . . ."  *Ibid.*

"[T]he mere common plan, design or even express agreement is not enough for liability in itself, and there must be acts of a tortious character in carrying it into execution."  *McCormac*, 387 N.J. Super. at 483 (citing *Restatement (Second) of*

#13850664.2

*Torts* § 876(b) cmt. d (Am. Law Inst. 1979)).  Moreover, "[o]ne who otherwise would be liable for a tort is not if he acts in pursuance of and within the limits of a privilege of his own or of a privilege of another that was properly delegated to him." *Restatement (Second) of Torts* § 890 (1979).

Ms. Shui has failed to allege facts sufficient to support a claim that the Law Firm Defendants knowingly and substantially assisted a breach of fiduciary duty that the Shareholder Defendants owed to her.  *See Wiatt*, 838 F. Supp. 2d at 307.  The Law Firm Defendants were entitled, and in fact required, to counsel TLG through its controlling majority member, Ms. Wang.  *See RPC* 1.13; *Brenner*, 134 N.J. at 505.  The provision of advice to the company cannot simultaneously be an ethical obligation of corporate counsel and a tort against Ms. Shui, a minority member who has expressed interests adverse to TLG and its majority members.  *See Schulman,* 401 N.J. Super. at 478; *O'Dowd*, 2014 WL 5482403, at *5; *RPC* 1.13; *McCormac*, 387 N.J. Super. at 483 (citing *Restatement (Second) of Torts* § 876(b) cmt. d (Am. Law Inst. 1979)); *Restatement (Second) of Torts* § 890 (1979).

Moreover, the Law Firm Defendants provided TLG legal advice concerning the members' respective rights and obligations under the Operating Agreement, Ms. Shui's request for a withdrawal-by-sale of her interest in TLG, and the potential sale of TLG to a third party.  It provided that advice pursuant to its ethical obligations to TLG, and TLG alone.  *See RPC* 1.13.  Ms. Wang, as majority member of TLG, had

the authority to choose whether to act consistent with that advice or reject it. *Brenner*, 134 N.J. at 505 ("because the majority has the controlling interest, it has the power to dictate to the minority the manner in which the corporation is run"); *Bostock*, 260 N.J. Super. at 443-44; *see also* RPC 1.13(b).  Whatever Ms. Wang's subsequent business decisions on behalf of TLG, or her personal decisions based on the advice of her own, separate, personal counsel, the Law Firm Defendants are not responsible to Ms. Shui for Ms. Wang's decisions.  Even if the Law Firm Defendants' advice to TLG later turned out to be ill-advised or incorrect, the mere provision of that advice cannot constitute an "act[] of a tortious character in carrying" into execution any alleged breach of fiduciary duty by Ms. Wang or Ms. Fan.  *See McCormac*, 387 N.J. Super. at 483 (citing *Restatement (Second) of Torts* § 876(b) cmt. d (Am. Law Inst. 1979)); *Wiatt*, 838 F. Supp. 2d at 307; *RPC* 1.13; *Restatement (Second) of Torts* § 890 (1979).

Accordingly, Ms. Shui has failed to state a viable claim against the Law Firm Defendants for aiding and abetting breach of fiduciary duty.

### C. <u>Ms. Shui Has Not Stated A Viable Claim For Aiding And Abetting Oppression.</u>

Ms. Shui's allegation that the Law Firm Defendants aided and abetted oppression pursuant to *N.J.S.A.* 42:2C-48(a)(5) fails to state a viable claim.

First, our research has not located a single case recognizing a viable cause of action against a corporate attorney for aiding and abetting the alleged oppressive

conduct of a shareholder or member where the alleged oppressors were represented by their own separate, independent counsel at the time.

Second, as discussed above, the Law Firm Defendant's mere provision of legal counsel to the controlling members of TLG does not constitute "substantial assistance" of any oppression by the Shareholder Defendants. *See Wiatt*, 838 F. Supp. 2d at 307; *McCormac*, 387 N.J. Super. at 481–83, 904; *Restatement (Second) of Torts* § 876(b) cmt. d (Am. Law Inst. 1979); *RPC* 1.13. As Ms. Shui has not alleged that the Law Firm Defendants were acting outside the scope of their attorney-client relationship to TLG and its obligation to take direction from its controlling members, the Law Firm Defendants cannot be held liable for zealous representation to their client. *See Restatement (Second) of Torts* § 890 (1979); *RPC* 1.13; *see also Heffernan*, 189 F.3d at 413.

Third, the rights and remedies of an alleged "oppressed" minority member of an LLC is governed by New Jersey statute. The remedies afforded under that statute are simply not remedies that can be awarded against non-members of the LLC. We have not located a single authority that an alleged oppressed minority member can expand the remedies available to her by dragging a non-member into the lawsuit under an aiding and abetting theory.

*N.J.S.A.* 42:2C-48 provides:

a. ***A limited liability company is dissolved***, and its activities shall be wound up, ***upon the occurrence of any of the following***:

(5) on application by a member, the entry by the Superior Court of an order dissolving the company on the grounds that ***the managers or those members in control of the company***:  (a) have acted, are acting, or will act in a manner that is illegal or fraudulent; or (b) ***have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant***.  (Emphasis added)

*N.J.S.A.* 42:2C-48(a)(5) is a statutory cause of action, arising neither from contract (such as an alleged violation of the Operating Agreement), nor tort (such as breach of fiduciary duty).  The statutory remedies available for oppression of a member are defined by *N.J.S.A.* 42:2C-48(a)(5).  Relief for oppression is limited to an Order against "managers or those members in control of the company." *Ibid.* There is no suggestion in the statute that those other than "managers and those members in control" are susceptible to a statutory claim of oppression, and nothing to suggest that others can be bootstrapped into such an action under a claim of aiding and abetting.

Accordingly, Ms. Shui has failed to state a claim for which relief can be granted against the Law Firm Defendants for alleged aiding and abetting oppression.

## POINT V

### THE COMPLAINT FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Ms. Shui alleges that the Law Firm Defendants' legal advice to the company intentionally inflicted emotional distress upon her.  *Compl.* ¶¶ 110-116.

"New Jersey has adopted the *Restatement (Second) of Torts* definition of intentional infliction of emotional distress." *Bishop v. Okidata, Inc.*, 864 F. Supp. 416, 427 (D.N.J. 1994) (citing *Buckley v. Trenton Saving Fund Soc.,* 111 N.J. 355, 365–66 (1988)).  "The Restatement defines the tort of intentional infliction of emotional distress as 'extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress to another.'" *Ibid.* (citing *Restatement (Second) of Torts* § 46(1) (1965)).

"[T]he limited scope of the tort tolerates many kinds of unjust, unfair and unkind conduct." *Fregara v. Jet Aviation Business Jets,* 764 F.Supp. 940, 956 (D.N.J. 1991). To recover on such a claim, the plaintiff must prove conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley,* 111 N.J. at 366 (*quoting Restatement (Second) of Torts* § 46 cmt. d).  The defendant must have acted intentionally or recklessly, that is, "defendant must intend both to do the act and to produce emotional distress" or defendant must have acted "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Lacy v. Cooper Hosp./Univ. Med. Ctr.*, 745 F. Supp. 1029, 1034 (D.N.J. 1990) (quoting *Major League Baseball Promotion v. Colour-tex,* 729 F.Supp. 1035, 1055 (D.N.J. 1990)).

"It is for the court to determine whether the plaintiff has alleged sufficiently extreme and outrageous conduct to allow a jury to grant her recovery." *Bishop*, 864 F. Supp. at 427. "If she has not, the claim may be dismissed." *Ibid.* Thus, the inquiry is a matter of law well-suited for adjudication on a motion to dismiss. *Ibid.*

Ms. Shui has alleged that the Law Firm Defendants practiced law, nothing more. It advised their client, TLG, and Ms. Shui does not like the advice given. The Complaint does not allege that the Law Firm Defendants ***intended*** to produce severe emotional distress in Ms. Shui, nor acted "recklessly in deliberate disregard of a high degree of probability" that Ms. Shui would experience severe distress as a result of their advice to TLG. *See Lacy,* 745 F. Supp. at 1034. Indeed, if such a cause of action were permitted, every litigant that endures the stress of litigation could pursue its adversary's lawyer for "causing" the stress. *See Perry v. Gold Laine, P.C.*, 371 F. Supp. 2d 622, 628 (D.N.J. 2005) (finding no cause of action against adverse attorney for intentional infliction of emotional distress).

Moreover, as the Law Firm Defendants had and have an ethical obligation to provide legal advice to TLG pursuant to *RPC* 1.13 such conduct cannot be reasonably considered "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley,* 111 N.J. at 366 (*quoting Restatement (Second) of Torts* § 46 cmt. d).

#13850664.2

Accordingly, the Court should dismiss Ms. Shui's claim of intentional infliction of emotional distress as to the Law Firm Defendants.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should grant the motion of Defendants Katsky Korins LLP, Meryl L. Unger, Esq., and Thomas M. Lopez, Esq. to dismiss Plaintiff Josephine Shui's Complaint with prejudice.

Dated:  June 5, 2023        **WILENTZ, GOLDMAN & SPITZER, P.A.**
*Attorneys for Defendants Meryl L. Unger, Esq.,
Thomas M. Lopez, Esq. and Katsky Korins LLP*

By:    *s/ Donald E. Taylor*
Donald E. Taylor, Esq.
90 Woodbridge Center Drive
Post Office Box 10
(732) 636-8000
dtaylor@wilentz.com

31

#13850664.2