## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
)
JOSEPHINE SHUI,                       )
)
    Plaintiff,                        )    Civil Action No. 23-cv-02620 (SRC)
)    (CLW)
v.                                    )
)
LEI WANG, HENGCHUN "HELENA"           )
FAN, MERYL L. UNGER, ESQ.,            )
THOMAS M. LOPEZ, ESQ., KATSKY         )
KORINS LLP and JOHN DOES (1-10),      )
)
    Defendants.                       )
)
_____)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS LEI WANG AND HENGCHUN "HELENA" FAN'S
## <u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

*ORAL ARGUMENT REQUESTED PER LOCAL CIVIL RULE 78.1(b)*

*Attorneys for Defendants Lei Wang and Helena Fan:*

**CHIESA SHAHINIAN &**
**GIANTOMASI, P.C.**
Adam K. Derman, Esq.
Jeanelly Nuñez, Esq.
105 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 530-2027
aderman@csglaw.com
jnunez@csglaw.com

**TODD & WELD, LLP**
Howard M. Cooper, Esq.
Joseph M. Cacace, Esq.
Gregory Browne, Esq.
*Pro hac vice*
One Federal Street
Boston, Massachusetts 02110
(617) 720-2626
hcooper@toddweld.com
jcacace@toddweld.com
gbrowne@toddweld.com

June 16, 2023

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ................................................................ 1

FACTUAL BACKGROUND ................................................ 1

    I.     The Lotus Group ................................................ 2

    II.    The Operating Agreement .............................. 2

         A. Members' Rights When Another Member Wishes to Withdraw .................................................... 3

         B. The Members Agree to Forego Salaries ...................... 4

    III.   Plaintiff Attempts to Convert Ms. Wang's and Ms. Fan's Undisputed Ability to Control TLG Into Claims of Wrongdoings ...................................................... 6

    IV.   Plaintiff Frivolously Demands to Be Bought Out ............................ 8

    V.    Plaintiff's Claims ............................................ 10

LEGAL STANDARD FOR MOTION TO DISMISS ................................ 10

ARGUMENT .................................................................... 11

    I.     The Economic Loss Doctrine Bars All of Plaintiff's Tort-Based Statutory and Common-Law Claims (Counts 2 through 8) ........................................ 11

    II.    Count 1 for Breach of Contract Fails Because There is No Obligation to Purchase a Member's Interests Under The Operating Agreement ...................................... 14

    III.   Count 2 for Oppression Fails Because Ms. Wang and Ms. Fan Followed TLG's Operating Agreement .......................... 18

i

IV.   Count 3 for Direct Action Under N.J.S.A. § 42:2CC-67
      Fails Because It Does Not Create an Independent Cause
      of Action, and Even If It Did, Plaintiff's Claims Are Not
      Actionable .......................................................................................... 23

V.    Count 4 for Breach of the Statutory Standards of Conduct Under
      N.J.S.A. § 42:2C-39 and Count 7 for Breach of the Covenant of
      Good Faith and Fair Dealing Fail Because the Complaint Does
      Not Adequately Allege "Intentional Misconduct," "Knowing
      Violation of Law," or Breach of the Covenant of Good Faith and
      Fair Dealing ...................................................................................... 27

VI.   Count 5 Breach of Fiduciary Duty Fails Because Plaintiff Fails
      To Adequately Allege a Breach........................................................ 30

VII.  Count 6 for Civil Conspiracy/Aiding and Abetting Oppression
      And Breach of Fiduciary Duty Fails Because Plaintiff
      Fails to Allege an Agreement or Any Wrongful Conduct,
      And the Intra-Corporate Conspiracy Doctrine Precludes
      Liability Here ................................................................................... 31

VIII. Count 8 for Intentional Infliction of Emotional Distress Fails
      Because Plaintiff Does Not Allege "Extreme and Outrageous"
      Conduct, Nor Does She Adequately Allege Damages ................... 36

CONCLUSION ............................................................................................. 40

# TABLE OF AUTHORITIES

**Cases**

*49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.*,
    547 A.2d 1134 (N.J. Super. Ct. App. Div. 1998) ......................... 38, 39

*Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*,
    No. 12-cv-7141 (ES), 2013 WL 6816394,
    (D.N.J. Dec. 23, 2013) .................................................................. 11, 13

*Arrow Inv. Advisors, LLC*,
    No. CIV.A. 4091-VCS, 2009 WL 1101682,
    (Del. Ch. Apr. 23, 2009) ..................................................................... 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................Passim

*Atlas Acquisitions, LLC v. Porania, LLC*,
    No. 18-cv-17524, 2019 WL 6130774................................................ 13

*Balsamides v. Protameen Chems., Inc.*,
    734 A.2d 721 (1999)........................................................................... 27

*Banco Popular N. Am. v. Gandi*,
    876 A.2d 253 (N.J. 2005) .................................................................. 32

*Barasch v. Williams Real Estate Co.*,
    104 A.D.3d 490 (App. Div. 2013)...................................................... 26

*Barry M. Dechtman, Inc. v. Sidpaul Corp.*,
    446 A.2d 518 (N.J. 1982) .................................................................. 18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................Passim

*Brenner v. Berkowitz*,
    634 A.2d 1019 (N.J. 1993) .......................................................... 21, 22

*Brown v. Caldwell*,
No. 20-cv-7907 (NLH),
2023 WL 3495904 (D.N.J. May 17, 2023).........................................17

*Buckley v. Trenton Saving Fund Soc*,
544 A.2d 857 (N.J. 1988) .........................................................36, 37, 39

*Callas v. Callas*,
No. 14-cv-7486 (JMV), 2017 WL 1102629,
(D.N.J. Mar. 24, 2017)......................................................................22

*Cajoeco LLC v. Bensi Enterprises, LLC*,
No. A-4562-18, 2021 WL 2472382,
(N.J. Super. Ct. App. Div. June 17, 2021)........................................23

*Cautilli v. G.A.F. Corp.*,
531 F.Supp. 71 (E.D. Pa. 1982)........................................................38

*Chambers v. Gold Medal Bakery*,
983 N.E.2d 983 (Mass. 2013)............................................................27

*City of Englewood v. Pulice*,
A-1930-20, 2022 WL 16596187
(N.J. Super. Ct. App. Div. Nov. 1, 2022) .........................................26

*Coleman v. Deutsche Bank Nat. Tr. Co.*,
No. 15-cv-1080 (JLL), 2015 WL 2226022,
(D.N.J. May 12, 2015).......................................................................12

*Connecticut Gen. Life Ins. Co. v. Punia*,
884 F. Supp. 148 (D.N.J. 1995).........................................................17

*Creque v. Texaco Antilles Ltd.*,
409 F.3d 150 (3d Cir. 2005) ..............................................................16

*Crivelli v. General Motors Corp.*,
215 F.3d 386 (3d Cir. 2000) ..............................................................16

*Cudjoe v. Ventures Trust 2013 I-H-R by MCM Capital Partners, LLLP*,
2019 WL 2118813 (D.N.J. 2019).......................................................32

*Davis v. Fein Such Kahn & Shepard PC*,
 2019 WL 1789471 (D.N.J. 2019) ........................................................ 33

*Dean v. Barrett Homes, Inc.*,
 204 N.J. 286 (2010) ............................................................................ 12

*Doherty v. American Motors Corp.*,
 728 F.2d 334 (6th Cir.1984) ............................................................... 33

*Exxon Corp. v. Wagner*,
 545, 382 A.2d 45 (App. Div. 1977) .................................................... 34

*Farrow v. Cape May Cnty. Corr. Ctr.*,
 No. 12-cv-1105 (RBK), 2014 WL 793324 ......................................... 39

*Ferraro v. Ferraro*,
 No. MRS-L-2592-19, 2022 WL 18145000,
 (N.J. Super. Ct. L. Div. Aug. 12, 2022) ............................................. 29

*Feuer v. Merck & Co.*,
 187 A.3d 873 (N.J. Super. Ct. App. Div. 2018) ................................. 24

*Fogarty v. Household Fin. Corp. III*,
 No. 14-cv-4525 (RBK), 2015 WL 852071
 D.N.J. Feb. 25, 2015) .......................................................................... 38

*Fowler v. UPMC Shadyside*,
 578 F.3d 203 (3d Cir. 2009) ............................................................... 11

*Freedom Waste Sols., Inc. v. Fam. Dollar*,
 No. 15-cv-4756 (SRC), 2015 WL 5996183 ................................. 12, 14

*Fraidin v. Weitzman*,
 611 A.2d 1046 (1992) .......................................................................... 35

*Fregara v. Jet Aviation Bus. Jets*,
 764 F. Supp. 940 (D.N.J. 1991) .......................................................... 38

*Gok v. Ports Am., Inc.* ,
 No. 15-cv-3468 (SRC), 2015 WL 4915518 (D.N.J 2015) ............... 36

*Goldfarb v. Solimine*,
    245 A.3d 570 (N.J. 2021) .................................................................. 15

*Griffen v. Tops Appliance City, Inc.*,
    766 A.2d 292 (2001).............................................................. 36, 40

*Haley v. Talcott*,
    864 A.2d 86 (Del. Ch. 2004) ........................................................... 20

*Harris v. Fein, Such, Kahn & Shepard*,
    2021 WL 211050 (D.N.J. 2021) ......................................................... 32

*Hedden v. Kean Univ.*,
    82 A.3d 238 (N.J. Super. Ct. Ap. Div. 2013) .................................... 25

*Heffernan v. Hunter*,
    189 F.3d 405 (3d Cir. 1999) (Aug. 17, 2015)................................... 35

*Hitchens v. Aptium Oncology, Inc.*,
    No. 10-cv-571 (SDW), 2012 WL 570344
    (D.N.J. Feb. 21, 2012) ...................................................................... 36

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
    No. 11-cv-1857 (DMC), 2012 WL 5554543
    (D.N.J. 2012) ................................................................ 13, 14, 35, 36

*IE Test, LLC v. Carroll*,
    140 A.3d 1268 (N.J. 2016) ......................................................... 19, 20

*Impact Protective Equip., LLC v. XTech Protective Equip.*, LLC,
    No. A-0879-19, 2021 WL 1395618,
    (N.J. Super. Ct. App. Div. Apr. 14, 2021)........................................ 23

*Johnston v. Baker*,
    445 F.2d 424 (3d Cir. 1974) ............................................................ 34

*Jones v. City of Chicago*,
    856 F.2d 985 (7th Cir.1988) ............................................................ 32

*Jubelt v. United N. Bankers, Ltd.*,
  No. 13-cv-7150 (ES), 2015 WL 3970227
  (D.N.J. June 30, 2015) ........................................................................ 33

*Kalisman v. Friedman*,
  No. CIV.A. 8447-VCL, 2013 WL 1668205
  (Del. Ch. Apr. 17, 2013) ..................................................................... 26

*Lamme v. Client Instant Access, LLC*,
  No. A-2689-20, 2022 WL 1276123
  (N.J. Super. Ct. App. Div. Apr. 29, 2022) ......................................... 18

*Leang v. Jersey City Bd. of Educ.*,
  969 A.2d 1097 (2009) ......................................................................... 38

*Marte v. Deutsche Bank National Trust Company*,
  2016 WL 6403082 (D.N.J. 2016) ....................................................... 13

*Maturo v. Bank of America*, N.A.,
  2017 WL 773878 (D.N.J. 2017) ......................................................... 13

*Namerow v. PediatriCare Assocs., LLC*,
  218 A.3d 839 (N.J. Super. Ct. Ch. Div. 2018) ........................... Passim

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d (3d Cir. 1993) ......................................................... 2, 8, 9, 13

*Reddy v. Patel*,
  No. 16-cv-8256 (JMV), 2018 WL 2723866,
  (D.N.J. June 5, 2018) ......................................................................... 21

*Royzenshteyn v. Pathak*,
  A-1810-19T2, 2020 WL 4528493
  (N.J. Super. Ct. App. Div. Aug. 6, 2020) ........................................... 26

*Serico v. Rothberg*,
  189 A.3d 343 (2018) ........................................................................... 15

*Sebring Associates v. Coyle*,
  790 A.2d 225 (N.J. App. Div. 2002) .................................................. 20

*Spectraserv, Inc. v. Middlesex Cnty. Util. Auth.*,
    2013 WL 4764514
    (N.J. Super. App. Div. July 25, 2013) .................................................. 12

*Spring Motors Distributors, Inc. v. Ford Motor Co.*,
    489 A.2d 660 (1985)........................................................................... 12

*Sunkett v. Misci*,
    183 F. Supp. 2d 691 (D.N.J. 2002)......................................... 33, 34, 35

*Taylor v. Metzger*,
    152 N.J. 490 (1988) ........................................................................... 38

*Thabault v. Chait*,
    541 F.3d 512 (3d Cir. 2008) .............................................................. 11

*Vacca v. Wilkens*,
    154 A. 842 (N.J. Ch. Ct. 1931).......................................................... 18

*Van Note v. Specialized Loan Servicing*, LLC,
    2022 WL 2209867 ....................................................................... 2, 8, 9

*Weichert Co. Realtors v. Ryan*,
    608 A.2d 280 (N.J. 1992) .................................................................. 17

*White v. Smiths Detection, Inc.*,
    No. 10-cv-4078 (SRC), 2010 WL 4269424
    (D.N.J. Oct. 22, 2010) ....................................................................... 37

*Ziglar v. Abbas*,
    137 S. Ct. 1843 (2017) ...................................................................... 34

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................. 10

**Statutes**

N.J.S.A. § 42:1-32(1)(d) ............................................................................... 20

N.J.S.A. § 42:2C-6 ................................................................... 11

N.J.S.A. § 42:2C-11(a)(1) ....................................................... 22

N.J.S.A. § 42:2C-11(i) ............................................................ 22

N.J.S.A. § 42:2C-39 .......................................................... 10, 27

N.J.S.A. § 42:2C-39(a) ............................................................ 27

N.J.S.A. § 42:2C-39(c) ............................................................ 28

N.J.S.A. §  42:2C-39(d) ........................................................... 28

N.J.S.A. §  42:2C-39(e) ...................................................... 30, 36

N.J.S.A. § 42:2C-40(g) ...................................................... 25, 29

N.J.S.A. § 42:2C-40(a)(1) & (g) ............................................. 26

N.J.S.A. § 42:2C-48 .................................................... 10, 18, 21

N.J.S.A. § 42:2C-48(b) ............................................................ 19

N.J.S.A. § 42:2C-48(c) ............................................................ 18

N.J.S.A. § 42:2C-48(a)(4)(b) .................................................. 19

N.J.S.A. § 42:2C-48(a)(5)(a) .................................................. 21

N.J.S.A. § 42:2C-48(a)(5)(b) .............................................. 21, 22

N.J.S.A. § 42:2C-67 .......................................................... 10, 23

N.J.S.A. § 42:2C-67(b) .................................................. 22, 27, 28

**Other Authorities**

Am. Jur. 2d Limited Liability Companies § 37 ............................................ 20

## INTRODUCTION

Plaintiff Josephine Shui's entire lawsuit is barred as a matter of law because it proceeds from the false premise that she somehow has a right to force her business partners, Lei Wang and Hengchun "Helena" Fan, to buy her out. Under the parties' Operating Agreement and well-established New Jersey law she does not. Nor can Plaintiff sue her business partners for operating TLG *in accordance with* the Operating Agreement to which Plaintiff, Ms. Wang, and Ms. Fan expressly agreed, and pursuant to which each of the members agreed to forego salaries and to be compensated solely through commissions and distributions. Put simply, all of Plaintiff's claims fail as a matter of law because they are either contradicted by the plain language of the Operating Agreement, or they are insufficient under New Jersey law. The Court should see this action for what it is: an attempt to leverage a buyout through the initiation, without basis, of costly litigation. The Court should dismiss the Amended Complaint with prejudice.

## FACTUAL BACKGROUND[1]

### I.    The Lotus Group

TLG is a boutique employment agency and recruiting firm specializing in placing temporary and permanent personnel in the biometrics field. Am. Complaint

---

[1] As required at this stage, the facts are drawn from the Amended Complaint and documents relied upon therein. Defendants do not admit any of the allegations.

("Compl.") ¶ 9, ECF No. 1-1. TLG was formed as a New Jersey limited liability company in January 2013. *Id.* ¶¶ 4, 7, 10. The ownership interests of the three members are as follows: 51% to Ms. Wang; 37% to Plaintiff; and 12% to Ms. Fan. *Id.* ¶¶ 4, 11-12. TLG's "business took off at a surprising pace" and "became profitable very quickly," which led to "tremendous year-after-year growth in the company's revenues and profits," *id.* ¶¶ 20-21, 34, thanks to Ms. Wang's and Ms. Fan's tireless efforts to develop clients and place professionals with those clients. Plaintiff, on the other hand, did very little to bring in placement candidates for clients at TLG, but she nevertheless received hundreds of thousands of dollars in compensation annually, totaling millions of dollars since TLG was formed.

## II.    **The Operating Agreement**

On or about May 1, 2013, Ms. Wang, Ms. Fan, and Plaintiff entered into the Operating Agreement for TLG, which was amended in June 2018. *Id.* ¶¶ 11, 26. A true and accurate copy of the Operating Agreement, as amended, is attached as **Exhibit A**[2] to the Certification of Adam K. Derman, Esq. in Support of Motion to Dismiss ("Certification"). TLG is member managed and a simple majority vote

---

[2] A court may consider an undisputed authentic document attached to a motion to dismiss where the plaintiff's claims are based on the document. *See, e.g.*, *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Van Note v. Specialized Loan Servicing*, LLC, No. 21-cv-12022 (SRC), 2022 WL 2209867, at *4 (D.N.J. June 21, 2022) (considering mortgage documents where complaint mentioned mortgage and relied on underlying loan).

governs almost every decision requiring a member vote. Compl. ¶ 12; Ex. A, § VIII, XVII, XIX & Org. Resolutions ¶ 2. Each member has access to the "Company books," which the Operating Agreement does not define, but which are "kept on a calendar year basis," and "closed and balanced at the end of each fiscal year." Compl. ¶ 13; Ex. A, § XII. TLG is to "furnish annual financial statements to the members." Ex. A, § XII.

### A. Members' Rights When Another Member Wishes to Withdraw

Article XV addresses the withdrawal of a member by the sale or transfer of their share and interest in TLG, and states in relevant part:

> Any member who shall be **desirous of selling or transferring their share and interest in the Company** shall give **the right of first refusal** to purchase said share and interest **at the same price** as being offered by **a bona fide and qualified buyer** to the other members. **Should any member be desirous of** transferring their shares in the company without consideration, to a third party or **withdrawing without a third party offer**, the **purchase price** to the other members shall be as **calculated per the provisions of Section XVI of this Operating Agreement**. Payment for the selling/withdrawing member's membership shall be made by the purchasing member in equal annual payments over a five year period without interest.

> All members **electing to purchase** (other than the selling member), and having the **right to purchase**, **may purchase** that percentage of share(s) being sold. The number of shares that can be purchased is calculated by dividing the member's respective percentage of the Company by the total percentage of shares of all members **electing to purchase**.

Compl. ¶ 14; Ex. A., § XV (emphasis added). In sum, the members have a right of first refusal if a member wishes to transfer their interests to a third party by sale or without consideration, and the right – *not the obligation* – to purchase a member's interests if a member wants to withdraw without a third-party offer. *Id.*[3] Ms. Wang and Ms. Fan chose not to exercise their right of first refusal or to purchase Plaintiff's interests. Compl. ¶ 40. Neither the Operating Agreement nor any amendment give a member the right to be bought out by the other members *on demand*.

### B. The Members Agree to Forego Salaries

The member managers of TLG expressly agreed at the outset "to forego salaries," and instead to be compensated with commissions for their performance and distributions from the business. Compl. ¶ 17. Article IX of the Operating Agreement explicitly states that "[w]ith the exception of commissions which shall be governed by a separate writing, **no member shall be separately compensated on a salaried basis for service performed in carrying out the operation of the Company. No salaries or individual compensation shall be otherwise payable, without consent of the Company, for the normal management**, although the Company may from time to time employ one or more managers or other

---

[3] Article XVI(d) sets forth an appraisal process to determine the purchase price *if* a member *elects* to purchase a deceased member's shares or to exercise her right of first refusal or purchase right. Compl. ¶¶ 26-27; Ex. A, First Amd.; *see also* Ex. A, § XVI (section title "**Option to Purchase** Interest on Death") (emphasis added).

representatives at a designated salary." Ex. A, § IX (emphasis added).

The Organizational Resolutions adopted by the members of TLG provide that responsibilities were to be divided among the members as follows:

Lei Wang – Client Development, Operations/Management
Jo Shui – Recruiting, Operations/Management
Helena Fan – Recruiting Immediately and Operations/Management upon fulltime employment.

*See* Compl. ¶ 17; Ex. A. Org. Res. ¶ 2.[4] Each member assumed operations and management responsibilities without compensation. *See* Compl. ¶ 18.[5]

Plaintiff now claims that "a disproportionate share of [management and operations] responsibilities fell upon" her, making her "unable to devote the same portion of her time as the other members to commission-earning tasks." Compl. ¶ 19. Plaintiff complains that Ms. Wang and Ms. Fan earned "substantial annual commissions" while Plaintiff "earned far less," *id*. ¶ 22, ignoring that this is precisely the deal the three members struck when they agreed they would all forego salaries and be paid only commissions and distributions. That Plaintiff earned less in commissions than Ms. Wang and Ms. Fan speaks only to Plaintiff's failure to

---

[4] Plaintiff alleges "the members were to share in management and operations responsibilities," but the Operating Agreement does not state nor does Plaintiff allege that they would share these tasks equally. *See* Compl. ¶ 19. Ms. Fan initially worked part time, but later increased her work to full time. *Id*. ¶¶ 18-22.

[5] The statement in the Organizational Resolutions that each managing member's annual salary was "[n]ot to exceed $1,000,000," is consistent with the agreement to forego salaries altogether. *See* Compl. ¶ 17; Ex. A, § IX.

develop business at the rate of Ms. Wang and Ms. Fan.[6]

Relatedly, Article XVII governs distributions and provides that "[p]rior to dissolution and at least annually as income has been received by the Company, accounts determined and tax returns filed, the members shall determine funds available for distribution" by majority vote. Ex. A, § XVII; *see also id.* § VIII. Historically, when funds were available, TLG distributed funds to help cover the members' tax liabilities. Compl. ¶¶ 24, 68.

## III. Plaintiff Attempts to Convert Ms. Wang's and Ms. Fan's Undisputed Ability to Control TLG Into Claims of Wrongdoing

Most of Plaintiff's Amended Complaint is an attempt to convert Ms. Wang's and Ms. Fan's proper exercise of their authority under the Operating Agreement to control TLG by majority vote, as somehow constituting "oppression," breach of contract, and breach of fiduciary duty. Indeed, Plaintiff herself recognizes that Ms. Wang alone "effectively controlled the company by virtue of her majority membership interest" under the Operating Agreement. Compl. ¶¶ 12, 23.

Nevertheless, Plaintiff tries in vain to turn Ms. Wang's and Ms. Fan's valid exercise of their rights under the Operating Agreement into something unlawful. Plaintiff includes a series of alleged wrongs that are either expressly permitted by

---

[6] Plaintiff claims that her "reasonable expectations" upon entering the Operating Agreement were frustrated, Compl. ¶ 25, but Plaintiff's expectations that were *directly contrary* to the Operating Agreement were not "reasonable." *See Namerow v. PediatriCare Assocs., LLC*, 218 A.3d 839, 847 (N.J. Super. Ct. Ch. Div. 2018).

the Operating Agreement, barred by New Jersey law, or too vague to state a claim:

- Plaintiff alleges that Ms. Wang refused to agree to managerial salaries, even though the members agree to forego them (Compl. ¶¶ 17-18, 23; Ex. A, § IX);

- Plaintiff alleges that distributions "were calculated so as to cover little more than the taxes the members would owe due to the business's taxable earnings each year," but under the Operating Agreement the members properly make that determination by majority vote (Compl. ¶ 24; Ex. A, § XVII; *id.* § VIII);

- Plaintiff vaguely alleges that "tensions developed" over "various human resources issues," including Ms. Wang's alleged decision to ask applicants about their citizenship status, allegedly "discriminatory recruitment and compensation practices," and "TLG's handling of other human resources and employment matters in a potentially illegal manner" (Compl. ¶ 30);

- Plaintiff claims that Ms. Wang and Ms. Fan "took advantage" of unspecified "health issues" that Plaintiff was allegedly suffering (Compl. ¶¶ 31-32, 36);

- Plaintiff alleges that Ms. Wang, the majority managing member with authority to hire counsel, "unilaterally" replaced TLG's counsel (Compl. ¶ 32);

- Plaintiff alleges that Ms. Wang, the majority managing member, "exercised unilateral control over the entire process" of attempting to find a third-party buyer of TLG in 2021, and speculates that Ms. Wang recently ceased efforts to sell TLG's business to a third party and Ms. Wang and Ms. Fan "have gone out of their way to make any attempt to negotiate a third-party purchase of [Plaintiff's] interests difficult" "to force [Plaintiff] to accept an insultingly lowball offer for her interest" before Ms. Wang and Ms. Fan sell the company for fair market value to a third party (Compl. ¶¶ 34, 46, 62);

- Plaintiff alleges that Ms. Wang's and Ms. Fan's declining to buy Plaintiff out somehow violates Article XV of the Operating Agreement, and that Ms. Wang and Ms. Fan "repudiated" a non-existent agreement to buy her out (Compl. ¶¶ 37-41, 64, 76-77; *see infra* Section I);

- Plaintiff alleges that Ms. Wang and Ms. Fan accused Plaintiff of interfering with TLG by "making inquiries about . . . the proper handling of human resources matters and . . . basic accounting information" (Compl. ¶ 41);

- Plaintiff takes issue with Ms. Wang taking "steps to cut off [Plaintiff's] access to bank records and ability to engage in banking services," which Ms. Wang did as the majority managing member due to Plaintiff's constant interference with and disruption of TLG's business activities (Compl. ¶¶ 41, 44, 47);

- Plaintiff claims that she has "been frozen out of, and denied access to" attorney-client communications and advice provided by Katsky Korins to TLG, even though Plaintiff is indisputably adverse to TLG (Compl. ¶ 45);

- Plaintiff claims that Wang "continues to make unilateral decisions," as is her right as the majority managing member, that Plaintiff vaguely and without support claims "have significant potential to negatively impact the business and its value and to harm and oppress [Plaintiff] personally" (Compl. ¶ 48);

- Plaintiff claims that Attorney Unger's informing Plaintiff's counsel that Plaintiff "has no authority to disclose . . . any company information to any third party" is somehow evidence of "assist[ing] in Wang's and Fan's oppression of Shui," but Plaintiff misleadingly omits the rest of the email, which explains the reason for this statement is that a discussion of a non-disclosure agreement was underway to protect TLG's interests and "[i]n the meantime," Plaintiff should not disclose any company information to any third parties (Compl. ¶ 50; a true and accurate copy of Meryl Unger's March 17, 2023 email to Scott Baron is attached as **Exhibit B** to the Certification);[7]

- Plaintiff alleges she "will incur a significant tax exposure" in the first quarter of 2023, and Ms. Wang "unilaterally declined to allow any distributions," but Plaintiff acknowledges that TLG's majority managing member made this business decision due to TLG's low "cash flows" (Compl. ¶¶ 67, 69); and

- Plaintiff vaguely alleges that Ms. Wang "sabotage[d]" Plaintiff's "candidate placement efforts" with one candidate by failing to use "best efforts" to support Plaintiff, as if it would be in Ms. Wang's interest to cause TLG to lose revenue by missing out on a placement opportunity (Compl. ¶ 71).

## IV.   **Plaintiff Frivolously Demands to Be Bought Out**

---

[7] The Court may consider this email because the Amended Complaint refers to it, its authenticity is undisputed, and Plaintiff's claims are based in part on it. *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196; *Van Note*, 2022 WL 2209867, at *4.

Plaintiff alleges that in February 2022 she approached Ms. Wang and Ms. Fan "with a request that they develop a plan for her exit with the next year or so." Compl. ¶ 35. Even though Ms. Wang and Ms. Fan have no obligation to buyout Plaintiff, Plaintiff claims that Ms. Wang and Ms. Fan "made an insultingly lowball offer," which she rejected. *Id*. ¶ 36.

Then Plaintiff lawyered up and began her current baseless strategy of trying to force Ms. Wang and Ms. Fan to buy her out. In January 2023, Plaintiff's counsel notified Ms. Wang and Ms. Fan of Plaintiff's "intention to exercise the withdrawal-by-sale right contained in Article XV of the Operating Agreement." Compl. ¶ 37. Plaintiff alleges that Attorney Unger of Katsky Korins "advised Shui's counsel in writing . . . of the intention of the other members to commence the appraisal process as described therein." Compl. ¶ 38. That writing – sent by *company counsel on behalf of the company* – simply states: "We intend to begin preparation for the appraisal process described in the First Amendment to the Operating Agreement." A true and accurate copy of Meryl Unger's January 24, 2023 email to Elliott Joffee and Scott Baron is attached as **Exhibit C** to the Certification.[8] While admitting this communication came "[t]hrough company counsel," Plaintiff claims that "Wang and Fan *accepted* [Plaintiff's] exercise of her right to a withdrawal-by-sale" and

_____

[8] The Court may properly consider this email as well. *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196; *Van Note*, 2022 WL 2209867, at *4.

characterizes this as Ms. Wang's and Ms. Fan's "agreement to commence the appraisal process." Compl. ¶¶ 41, 76 (emphasis process). But Plaintiff acknowledges that Ms. Wang and Ms. Fan were represented by separate *individual counsel* who made clear that Ms. Wang and Ms. Fan *never accepted Plaintiff's offer to sell her interests* to Ms. Wang and Ms. Fan and did not intend to buy Plaintiff out. *Id.* ¶ 40. Plaintiff mischaracterizes this statement by Ms. Wang's and Ms. Fan's individual counsel as a "repudiation" of a non-existent agreement to buy Plaintiff out on her own terms. *Id.* ¶¶ 41, 77.

## V.    Plaintiff's Claims

Plaintiff's Amended Complaint asserts the following eight counts, none of which is viable: (1) breach of contract and specific performance of Article XV of the Operating Agreement; (2) oppression under N.J.S.A. § 42:2C-48; (3) direct action by a member to enforce her rights under N.J.S.A. § 42:2C-67; (4) breach of the statutory standards of conduct under N.J.S.A. § 42:2C-39; (5) breach of fiduciary duty; (6) civil conspiracy and aiding and abetting oppression and breach of fiduciary duty; (7) breach of the covenant of good faith and fair dealing; and (8) intentional infliction of emotional distress. The Court should dismiss each claim with prejudice.

## LEGAL STANDARD FOR MOTION TO DISMISS

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff must offer more than "labels and conclusions," "a formulaic recitation of the elements," and "naked assertions" with no "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). An incantation of buzz words from statutes and cases "will not do" under *Iqbal* and *Twombly*. *Id*. After disregarding legal conclusions unsupported by facts, the Court must determine whether the alleged facts are sufficient to show the plaintiff has a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). If the Court cannot "infer more than the mere possibility of misconduct," the Complaint must be dismissed. *Id*. (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT[9]

### I. The Economic Loss Doctrine Bars All of Plaintiff's Tort-Based Statutory and Common-Law Claims (Counts 2 through 8).

The economic loss doctrine bars all of Plaintiff's tort-based claims for oppression (Count 2), direct action (Count 3), breach of statutory and fiduciary

---

[9] New Jersey law applies to all of Plaintiff's claims. *See Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008) (choice-of-law rules of forum state govern); N.J.S.A. § 42:2C-6 (New Jersey law governs "internal affairs" of New Jersey LLC).

duties (Counts 4 and 5), civil conspiracy (Count 6), breach of the implied covenant of good faith and fair dealing (Count 7), and intentional infliction of emotional distress (Count 8) because each of those claims arises solely from the contractual relationship and obligations created by the Operating Agreement.

The economic loss doctrine delineates the boundary between contract and tort by barring tort recovery when the parties' relationship is contractual. *See Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*, No. 12-cv-7141 (ES), 2013 WL 6816394, at *6 (D.N.J. Dec. 23, 2013) (citing *Dean v. Barrett Homes, Inc.*, 8 A.3d 766, 771 (2010)); *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 672 (1985). "[A] plaintiff may not use a tort theory of relief to recover economic losses to which the plaintiff's entitlement flows only from a contract." *Freedom Waste Sols., Inc. v. Fam. Dollar*, No. 15-cv-4756 (SRC), 2015 WL 5996183, at *4 (D.N.J. Oct. 14, 2015); *see also Spectraserv, Inc. v. Middlesex Cnty. Util. Auth.*, 2013 WL 4764514, at *6 (N.J. Super. App. Div. July 25, 2013) ("[T]he purpose of a tort duty…is to protect society's interest in freedom from harm…whereas [a] contractual duty…arises from society's interest in the performance of promises") (quoting *Spring Motors*, 489 A.2d at 672).

Where, as here, a plaintiff's tort claims are "contractual in nature, flowing directly from the parties' interpretation of the [Operating] Agreement," the economic loss doctrine bars statutory oppression and related tort claims. *Namerow*,

218 A.3d at 846 (dismissing retired LLC member's claims of oppression because "plaintiff's entitlement [to a buyout using a specific valuation methodology] clearly flows from the [Operating] Agreement."). This court regularly dismisses tort-based claims under the economic loss doctrine, including claims for oppression, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and intentional infliction of emotional distress.[10]

Under these principles, each of Plaintiff's tort-based claims is barred by the economic loss doctrine because they flow from the parties' contractual relationship under the Operating Agreement. *See Namerow*, 218 A.3d at 846. Broadly speaking, all of Plaintiff's claims revolve around Ms. Wang and Ms. Fan managing the company as majority owners under the Operating Agreement. More specifically, Article XV addresses the withdrawal of a member by the sale or transfer of their share and interest in TLG. Ex A, § XV. Plaintiff's complaints about not earning a

---

[10] *See, e.g.*, *Coleman v. Deutsche Bank Nat. Tr. Co.*, No. 15-cv-1080 (JLL), 2015 WL 2226022, at *4 (D.N.J. May 12, 2015) (breach of covenant of good faith and fair dealing, breach of fiduciary duty, intentional infliction of emotional distress); *Am. Fin. Res., Inc.*, 2013 WL 6816394, at *5 (breach of fiduciary duty and covenant of good faith and fair dealing); *Marte v. Deutsche Bank National Trust Company*, 2016 WL 6403082, *4 (D.N.J. 2016) (breach of covenant of good faith and fair dealing and fiduciary duty); *Maturo v. Bank of America*, N.A., 2017 WL 773878, *6 (D.N.J. 2017) (intentional infliction of emotional distress); *Atlas Acquisitions, LLC v. Porania, LLC*, No. 18-cv-17524 (WJM), 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019) (fraudulent inducement); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 11-cv-1857 (DMC), 2012 WL 5554543, at *4 (D.N.J. Nov. 14, 2012) (breach of fiduciary duty, misappropriation, tortious interference, conspiracy).

salary are governed by Article IX. Ex. A., § IX. Plaintiff's status as a minority member and the agreed upon voting structure are equally addressed in the Operating Agreement. Ex. A, §§ V, VIII. Plaintiff's complaints concerning distributions are covered by Article XVII, and her alleged assumption of operational and managerial duties is covered by the Organizations Resolutions. Ex. A. Plaintiff's alleged concern that Ms. Wang and Ms. Fan have "frustrat[ed] [her] contractually recognized right to seek third-party purchasers for her interest" (Compl. ¶ 108) is addressed by Article XV. Ex. A, § XV. Even Plaintiff's access to "[t]he Company books" is covered by Article XII. *Id.*, § XII.

In sum, each of the tort-based claims is barred because they arise from or are covered by the obligations in the Operating Agreement. *Namerow*, 218 A.3d at 846; *Atlas Acquisitions, LLC*, 2019 WL 6130774, at *3; *Howmedica Osteonics Corp.*, 2012 WL 5554543, at *4 (economic loss doctrine bars tort claims where "underlying facts are not separate and distinct"); *Freedom Waste Solutions, Inc.*, 2015 WL 5996183 at *4 (plaintiff cannot "recycle its breach of contract claim as tort causes of action").[11]

## II.    Count 1 for Breach of Contract Fails Because There is No Obligation to Purchase a Member's Interests Under the Operating Agreement.

---

[11] To the degree Plaintiff relies on "various human resources matters" (Compl. ¶ 81), Ms. Wang and Ms. Fan's alleged "steps to devalue or dissolve TLG" (Compl. ¶ 95), or any other allegations that might be extrinsic to the Operating Agreement, those allegations fail for independent reasons. *See infra* Sections II, VI, and VII.

Plaintiff's claim for breach of contract and specific performance fails because Ms. Wang and Ms. Fan had the *right* – but not the *obligation* – to purchase Plaintiff's interests in TLG when she expressed a desire to withdraw. Plaintiff cannot convert this permissive right into a contractual obligation by alleging that Ms. Wang and Ms. Fan somehow "accepted" Plaintiff's "exercise of her right to a withdrawal-by-sale" (Compl. ¶ 76) when TLG counsel (not individual counsel) wrote to Plaintiff's counsel that TLG "intend[s] to begin preparation for the appraisal process." Ex. C.

*First*, Ms. Wang and Ms. Fan did not breach the Operating Agreement because they had no obligation to buy Plaintiff's interest on demand. Plaintiff must plead four elements to successfully allege a breach of contract: (1) "the parties entered into a contract"; (2) "plaintiff[] did what the contract required [her] to do"; (3) "defendants did not do what the contract required them to do," (*i.e.*, a "breach of the contract"); and (4) "defendants' breach…caused a loss to the plaintiffs." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021). "[I]f the contract into which the parties have entered is clear, then it must be enforced as written." *Serico v. Rothberg*, 189 A.3d 343, 350 (2018); *see also Namerow*, 218 A.3d at 843 ("[W]here the terms of a contract are clear and unambiguous, there is no room for interpretation or construction."). Plaintiff fails on the third and fourth elements.

Article XV of the Operating Agreement gives the other members a right of first refusal if a member wishes to transfer their interests to a third party by sale or

15

by transfer without consideration, and the right to purchase a member's interests if they want to withdraw without a third-party offer. Compl. ¶ 14; Ex. A., § 15. The first sentence in Article XV specifies the purchase price where there is a bona fide third-party offer and a member chooses to exercise their right of first refusal. Compl. ¶ 14; Ex. A., § XV. The second sentence specifies the method for determining the purchase price if a member exercises her right of first refusal or purchase right when the withdrawing member has no offer from a bona fide third-party buyer (either because they want to transfer their shares to a third party with no consideration or want to withdraw without a third-party offer). *Id*. The third sentence provides the payment terms *if* a member exercises her right of first refusal or purchase right. *Id*.

New Jersey law is clear that these provisions give Ms. Wang and Ms. Fan the *right*, but not the *obligation*, to buy Plaintiff's interests should they elect to do so. A right of first refusal gives the holder of that right the option, but not the obligation, to exercise the right. *See, e.g.*, *Creque v. Texaco Antilles Ltd.*, 409 F.3d 150, 152 (3d Cir. 2005) (quoting 17 C.J.S. *Contracts* § 56 (2004) and *Crivelli v. General Motors Corp.,* 215 F.3d 386, 389 (3d Cir. 2000)). And the plain language of the Operating Agreement confirms that the option to purchase is a right but not an obligation. Indeed, Plaintiff conveniently omits a critical provision in Article XV, which states that "[a]ll members **electing** to purchase…and having the **right** to purchase, **may** purchase that percentage of share(s) being sold." Ex. A, § XV. The very next section

of the Operating Agreement, which sets out the appraisal process *if* a member *elects* to exercise her right of first refusal or purchase right, is called "**Option to Purchase Interest on Death**." Ex. A, § XVI (emphasis added).

In short, the plain language of the Operating Agreement is clear that Ms. Wang and Ms. Fan had a *right* – but not an *obligation* – to buy Plaintiff's interest. "The court has no right to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." *Connecticut Gen. Life Ins. Co. v. Punia*, 884 F. Supp. 148, 152 (D.N.J. 1995); *see also Namerow*, 218 A.3d at 843 (rejecting plaintiff's attempt to require valuation method not required by operating agreement). Therefore, Plaintiff has not alleged a breach of the Operating Agreement nor any harm flowing from a breach.

*Second*, Attorney Unger's statement on behalf of TLG that "[w]e intend to **begin preparation** for the appraisal process" is not an "acceptance" of Plaintiff's offer to withdraw – and certainly not an "acceptance" by Ms. Wang or Ms. Fan individually. "A contract is formed where there is offer and acceptance and terms sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." *Brown v. Caldwell*, No. 20-cv-7907 (NLH), 2023 WL 3495904, at *1 (D.N.J. May 17, 2023). Company counsel's stated intention to "begin preparation" for an appraisal process cannot be construed in any way as an unqualified acceptance by Ms. Wang or Ms. Fan of Plaintiff's offer to transfer her

interests in TLG. *See Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) ("[I]t is requisite that there be an **unqualified acceptance** to conclude the manifestation of assent."). (Emphasis added).[12]

*Third*, Plaintiff is not entitled to specific performance in any event because, even if the Court disagrees that the Operating Agreement clearly does not require a buyout, Article XV is at most ambiguous as to whether a buyout is permitted or required. *See Barry M. Dechtman, Inc. v. Sidpaul Corp.*, 446 A.2d 518, 521 (N.J. 1982) ("The appropriateness of the specific performance remedy…depends upon the clarity of the terms of the contract"); *Vacca v. Wilkens*, 154 A. 842, 843 (N.J. Ch. Ct. 1931) ("Specific performance…should not be granted unless the right thereto is clearly and conclusively established."). Therefore, the Court should, at a minimum, dismiss the request for specific performance in Count 1.

### III. Count 2 for Oppression Fails Because Ms. Wang and Ms. Fan Followed TLG's Operating Agreement.[13]

---

[12] That Plaintiff hired her own appraisers allegedly "in furtherance of the process" in the First Amendment of the Operating Agreement (Compl. ¶ 77), not only misconstrued the equivocal statement by company counsel, but also misunderstood the Operating Agreement itself. *See* Ex. A, First Amd. ("remaining Members" conduct valuation first, after which transferring member can elect to accept or conduct its own valuation). That Ms. Wang and Ms. Fan did not provide an appraisal to Plaintiff underscores that they did not "accept" Plaintiff's buyout offer.

[13] At the appropriate time, Ms. Wang and Ms. Fan will seek their attorneys' fees and expenses because Plaintiff has brought this claim, and indeed this entire action, vexatiously and in bad faith. *See* N.J.S.A. § 42:2C-48(c). Additionally, if the Complaint is not dismissed, Plaintiff's claims will fail under the business judgment rule, which "protects members of an LLC 'from being questioned or second-guessed

Count 2 relies on N.J.S.A. § 42:2C-48, which provides in relevant part:

> a. A limited liability company is dissolved, and its activities shall be wound up, upon the occurrence of any of the following:…
>
> (4) on application by a member, the entry by the Superior Court of an order dissolving the company on the grounds that:…(b) it is not reasonably practicable to carry on the company's activities in conformity with…the operating agreement; or
>
> (5) on application by a member, the entry by the Superior Court of an order dissolving the company on the grounds that the managers or those members in control of the company: (a) have acted, are acting, or will act in a manner that is illegal…; or (b) have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant.

Count 2 fails for at least four reasons.

_First_, Plaintiff does not seek dissolution, but instead seeks "enforcement of Article XV of the Operating Agreement" (_i.e._, a forced buyout). Compl. ¶ 83; _see also_ N.J.S.A. § 42:2C-48(b) (permitting order of sale of member's interests only if "fair and equitable to all parties under the circumstances of the case"). As explained above, however, the remedy sought by Plaintiff is not an option for her because the plain language of Article XV does not mandate a buyout of her interests. Ordering a buyout would mean re-writing rather than "enforce[ing]" Article XV. _See Namerow_,

---

on conduct of corporate affairs except in instances of fraud, self-dealing, or unconscionable conduct.'" _See Lamme v. Client Instant Access, LLC_, No. A-2689-20, 2022 WL 1276123, at *3 (N.J. Super. Ct. App. Div. Apr. 29, 2022).

218 A.3d at 146. Count 2 fails for this simple reason.

_Second_, Plaintiff includes no allegations as to how or why it would not be "reasonably practicable" to carry on TLG's activities in conformity with the Operating Agreement under N.J.S.A. § 42:2C-48(a)(4)(b). New Jersey courts recognize that LLC members seeking drastic remedies such as this "are required to clear a high bar" that is not met "merely because there is a conflict." _IE Test, LLC v. Carroll_, 140 A.3d 1268, 1279 (N.J. 2016). "The court will not dissolve a limited liability company merely because the LLC has not experienced a smooth glide to profitability or because events have not turned out exactly as the LLC's owners originally envisioned; dissolution is reserved for situations in which the LLC's management has become so dysfunctional or its business purpose so thwarted that it is no longer practicable to operate the business, such as in the case of a voting deadlock or where the defined purpose of the entity has become impossible to fulfill." Am. Jur. 2d Limited Liability Companies § 37.[14]

---

[14] _Cf IE Test, LLC_, 140 A.3d at 1279 (applying multi-factor test for expulsion of LLC member under N.J.S.A. § 42:2C–46(e)(3) where "not reasonably practicable" to carry on LLC business, focusing on whether members were deadlocked and financial feasibility of continuing business); _Sebring Associates v. Coyle_, 790 A.2d 225, 236 (N.J. App. Div. 2002) (dissolving partnership under N.J.S.A. § 42:1–32(1)(d) because it was "not reasonably practicable to carry on the business in partnership with" partner who "fail[ed] to respond to cash calls" in violation of partnership agreement); _In re Arrow Inv. Advisors, LLC_, No. CIV.A. 4091-VCS, 2009 WL 1101682, at *1 (Del. Ch. Apr. 23, 2009) (granting motion to dismiss and opining "this court must look to the operating agreement of the LLC to determine

Here, Plaintiff fails to meet that high bar, alleging only conflict (not an inability to carry on TLG's business), which is insufficient under New Jersey law. *See IE Test, LLC*, 140 A.3d at 1279. Plaintiff alleges no facts plausibly suggesting TLG's business cannot continue due to its financial position,[15] a voting deadlock, or any other reasons for dissolution recognized by law. Ms. Wang retains fifty-one percent of the vote and remains able to make company decisions regardless of Plaintiff's efforts to force a buyout. And, as argued below, Plaintiff's barebone allegations of illegality are insufficient to plausibly suggest TLG cannot carry on in accordance with its Operating Agreement.

*Third*, Plaintiff fails to adequately allege Ms. Wang or Ms. Fan have acted or will act in a manner that is "illegal," as required under N.J.S.A. § 42:2C-48(a)(5)(a). Plaintiff's threadbare allegations about "various human resources matters" (Compl. ¶ 81), which Ms. Wang and Ms. Fan unequivocally deny, are plainly insufficient under *Iqbal* and *Twombly*. *See Reddy v. Patel*, No. 16-cv-8256 (JMV), 2018 WL 2723866, at *5 (D.N.J. June 5, 2018) (dismissing claim under N.J.S.A. § 42:2C-48 due to "fail[ure] to plausibly plead these claims"). Plaintiff fails to provide even basic details, and therefore fails to provide fair notice to Ms. Wang and Ms. Fan of Plaintiff's claim that they have acted in an illegal manner. *Twombly*, 550 U.S. at 555

---

the purpose for which it was formed"); *Haley v. Talcott*, 864 A.2d 86, 95 (Del. Ch. 2004) (ordering dissolution of LLC with two 50% members due to deadlock).

[15] To the contrary, Plaintiff alleges TLG is doing well financially. Compl. ¶ 34.

(at minimum, a complaint must provide fair notice of what the claim is and the grounds upon which it rests). Plaintiff's use of buzz words "will not do" and cannot survive a 12(b)(6) attack. *Iqbal*, 556 U.S. at 678.

So too, "[i]llegality and fraud may…not qualify as oppression," where, as here, the alleged illegal acts are not "directed at a minority shareholder **personally**." *Brenner v. Berkowitz*, 634 A.2d 1019, 1028 (N.J. 1993) (emphasis added); *see also* N.J.S.A. § 42:2C-48(a)(5)(b) (requiring that oppressive conduct "be directly harmful to the applicant"); *see also* N.J.S.A. § 42:2C-67(b) (member maintaining direct action "shall plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the" LLC). Plaintiff does not claim that any of the vaguely alleged "illegal" acts were directed at or harmed her individually as opposed to TLG generally. Therefore, her oppression claim is insufficient as a matter of law.

*Fourth*, Plaintiff fails to allege "oppressive" conduct under N.J.S.A. § 42:2C-48(a)(5)(b) because her reasonable expectations were not frustrated. "Under New Jersey law, 'oppression has been defined as frustrating a [member's] reasonable expectations' and 'is usually directed at a minority [member] personally…'" *Namerow*, 218 A.3d at 845-46 (quoting *Brenner*, 634 A.2d at 1019). Under New Jersey law, however, "the operating agreement governs…relations among the members as members." N.J.S.A. § 42:2C-11(a)(1); *see also id*. § 42:2C-11(i) ("This

act is to be liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements."); *Callas v. Callas*, No. 14-cv-7486 (JMV), 2017 WL 1102629, at *4 (D.N.J. Mar. 24, 2017) ("the Act controls only in the absence of an operating agreement or if a listed exception applies").

The Complaint amounts to the claim that Ms. Wang and Ms. Fan ran TLG in accordance with its Operating Agreement. As explained in Section I above, the Operating Agreement covers all of Plaintiff's allegations of oppressive conduct and, as such, Plaintiff's alleged expectations to be bought out, receive a salary for operational tasks, somehow alter the terms of the Operating Agreement despite holding a minority voting position, among others, are unreasonable on their face. Plaintiff freely entered the Operating Agreement, providing the majority member, Ms. Wang, with the right and ability to direct company decisions. Compl. ¶ 12. Plaintiff cannot now viably claim this voting structure is oppressive because she agreed to terms that no longer suit her. *See Namerow*, 218 A.3d at 846 (no oppression where "the [Operating] Agreement clearly covers the disputed conduct" and "plaintiff's detrimental reliance on [her] interpretation of the agreement does not warrant a finding of oppressive behavior by the defendants"). Count 2 should be dismissed.

### IV.    Count 3 for Direct Action Under N.J.S.A. § 42:2C-67 Fails Because It Does Not Create an Independent Cause of Action, and Even If It

**Did, Plaintiff's Claims Are Not Actionable.**

*First*, Count 3 should be dismissed because N.J.S.A. § 42:2C-67 addresses only a member's standing to bring direct claims against other members – it does not create an independent cause of action. *See, e.g.*, *Cajoeco LLC v. Bensi Enterprises, LLC*, No. A-4562-18, 2021 WL 2472382, at *8 (N.J. Super. Ct. App. Div. June 17, 2021); *Impact Protective Equip., LLC v. XTech Protective Equip., LLC*, No. A-0879-19, 2021 WL 1395618, at *6 (N.J. Super. Ct. App. Div. Apr. 14, 2021).

*Second*, Count 3 should be dismissed because Plaintiff fails to allege violation of any "rights belonging to [her] under the Operating Agreement." Compl. ¶ 87. Plaintiff's factual allegations in support of this count are that: (1) she was "denied access to information essential both to her ability to continue to serve in her role within TLG and to her ability to solicit third-party purchasers for her interest in TLG" (*id.* ¶ 85); and (2) she was "cut off from company counsel" and "deprived…of her right to know and understand the advice being given to TLG by…company counsel" even though Plaintiff is adverse to TLG (*id.* ¶ 86). *See also id.* ¶¶ 44-45.

With respect to Plaintiff's access to information, the Operating Agreement gives each member access to the "Company books," which the Operating Agreement does not define, but which are to "be kept on a calendar year basis," and "closed and balanced at the end of each fiscal year." Compl. ¶ 13; Ex. A, § XII. Further, TLG is to "furnish annual financial statements to the members." Ex. A, § XII. When read in

context, "Company books" clearly refers to TLG's annual financial statements. *Cf.*

*Feuer v. Merck & Co.*, 187 A.3d 873, 878 (N.J. Super. Ct. App. Div. 2018), *aff'd*,

207 A.3d 264 (2019) ("The phrase 'books and records of account' does not

encompass any and all records, books, and documents of a corporation.").

Plaintiff does not allege that annual financial statements were not furnished to

her, that the "Company books" have not been properly kept, or that she has not

received information to which she is entitled.[16] Rather, she alleges at most that

TLG's corporate counsel properly informed Plaintiff's counsel that Plaintiff "has no

authority to disclose (directly or indirectly) any company information to any third

party" without a non-disclosure agreement. *See* Compl. ¶ 50; Ex. B. Far from an

allegation of breach of the Operating Agreement, that is an allegation that Ms. Wang

and Ms. Fan properly directed corporate counsel to prevent disclosure of TLG's

confidential information to third parties without protection. *See* N.J.S.A. § 42:2C-

40(g) ("[A] limited liability company…may impose reasonable restrictions and

conditions on access to and use of information to be furnished under this section,

including designating information confidential and imposing nondisclosure and

safeguarding obligations on the recipient."). That Plaintiff, on the other hand, wishes

to carelessly disclose TLG's confidential information without a non-disclosure

---

[16] Plaintiff alleges that Ms. Wang "took steps to cut off [Plaintiff's] access to bank records." Compl. ¶ 44. However, "bank records" are not the same as the "Company books," which clearly refer to annual financial statements.

agreement, exposes her improper intentions.

As for Plaintiff's access to privileged communications between TLG and its corporate counsel, Plaintiff is not entitled to those communications because she is a minority member outside the litigation control group and adverse to TLG. *See, e.g.*, *Hedden v. Kean Univ.*, 82 A.3d 238, 244 (N.J. Super. Ct. Ap. Div. 2013) (elements of attorney-client privilege); N.J. R. Prof. C. 1.13(a) ("organization's lawyer" represents "organizational entity" and "litigation control group"); *City of Englewood v. Pulice*, A-1930-20, 2022 WL 16596187, at *4 (N.J. Super. Ct. App. Div. Nov. 1, 2022) (member in litigation control group if "responsible for, or significantly involved in, the determination of the organization's legal position"); *Royzenshteyn v. Pathak*, A-1810-19T2, 2020 WL 4528493, at *5 (N.J. Super. Ct. App. Div. Aug. 6, 2020) (shareholders in close corporation do not hold privilege "individually and distinctly from the corporate entity"); N.J.S.A. § 42:2C-40(a)(1) & (g).[17]

We are aware of no New Jersey authority permitting Plaintiff to pierce TLG's privilege with its corporate counsel merely because she remains a minority member of TLG. However, the Appellate Division of the Supreme Court of New York has held that even a director of a corporation "should not be allowed to use [her] corporate position to waive the privilege that attaches to the corporation in a

---

[17] Ms. Wang and Ms. Fan incorporate the arguments at pages 16-21 of the Law Firm Defendants' Brief (ECF No. 20-1) on these points.

litigation relating to [her] own rights in which [she] is asserting claims that are or may be adverse to the corporation." *Barasch v. Williams Real Estate Co.*, 104 A.D.3d 490, 492 (App. Div. 2013). Other courts have held similarly. *See, e.g.*, *Kalisman v. Friedman*, No. CIV.A. 8447-VCL, 2013 WL 1668205, at \*5 (Del. Ch. Apr. 17, 2013) ("a board or a committee can withhold privileged information once sufficient adversity exists between the director and the corporation such that the director could no longer have a reasonable expectation that he was a client of the board's counsel");[18] *Chambers v. Gold Medal Bakery*, 983 N.E.2d 683, 695 (Mass. 2013) (applying Delaware law and reversing order compelling production of privileged communications between corporate counsel and one faction of directors/shareholders to another director/shareholder whose interests became adverse to corporation).

Simply put, Plaintiff seeks only to gain leverage by seeking privileged communications with corporate counsel to which she is not entitled. For these reasons, Count 3 should be dismissed with prejudice.

> **V.    Count 4 for Breach of the Statutory Standards of Conduct Under N.J.S.A. § 42:2C-39 and Count 7 for Breach of the Covenant of Good Faith and Fair Dealing Fail Because the Complaint Does Not Adequately Allege "Intentional Misconduct," "Knowing Violation of Law," or Breach of the Covenant of Good Faith and Fair Dealing.**

---

[18] New Jersey courts look to Delaware law for guidance in cases involving corporate law and shareholder disputes. *See, e.g.*, *Balsamides v. Protameen Chems., Inc.*, 734 A.2d 721, 732 (1999).

"A member of a member-managed limited liability company," like TLG, "owes to the company and, subject to [N.J.S.A. § 42:2C-67(b) for direct actions] the other members, the duties of loyalty and care stated in subsections b. and c." N.J.S.A. § 42:2C-39(a). Count 4 asserts only breaches of the statutory duty of care and good faith and fair dealing (not the duty of loyalty). *See* Compl. ¶¶ 88-91. "The duty of care of a member of a member-managed limited liability company in the conduct…of the company's activities is to refrain from engaging in grossly negligent or reckless conduct, **intentional misconduct**, or a **knowing violation of law**." N.J.S.A. § 42:2C-39(c) (emphasis added). "A member shall discharge the duties under this act or under the operating agreement and exercise any rights consistently with the contractual obligation of **good faith and fair dealing**." *Id*. § 42:2C-39(d) (emphasis added). Plaintiff alleges only "intentional misconduct" and "knowing violations of law," including "certain human resources issues," and breach of the duty of "good faith and fair dealing" by making "efforts to frustrate [Plaintiff's] contractually recognized right to seek third-party purchasers for her interest." Compl. ¶¶ 89-90, 108. Those claims fail as a matter of law.

*First*, as noted in Section III, Plaintiff's allegations concerning "various human resource matters" (Compl. ¶ 81) are not sufficiently plead and fail to meet the minimum requirements set forth in *Iqbal* and *Twombly*, as Plaintiff has only cherry-picked buzz words from N.J.S.A § 42:2C-39. *Iqbal*, 556 U.S. at 678. Further,

Plaintiff does not claim or articulate how the allegations of "intentional misconduct" and "knowing violations of law" have harmed *her* as opposed to TLG *generally*. *See* N.J.S.A. § 42:2C-67(b) (requiring harm to individual). The claim under N.J.S.A. § 42:2C-39(c) fails for those reasons.

<u>Second</u>, Plaintiff has not adequately alleged a breach of the covenant of good faith and fair dealing under N.J.S.A. § 42:2C-39(d) or the common law because she has not adequately alleged bad faith in connection with Plaintiff's "right to seek third-party purchases for her interest." Compl. ¶ 108. While the covenant of good faith and fair dealing is implied in every contract under New Jersey law, the "implied covenant cannot supersede a contract's express terms" and requires "bad faith performance of an agreement." *Ferraro v. Ferraro*, No. MRS-L-2592-19, 2022 WL 18145000, at *9 (N.J. Super. Ct. L. Div. Aug. 12, 2022) (rejecting good faith and fair dealing claim because plaintiff could not prove defendants acted in bad faith).

Plaintiff was and is entitled to seek a third-party purchaser of her interest, and there is no allegation that Ms. Wang and Ms. Fan did anything to prevent her from doing so. At most, Plaintiff alleges that TLG's corporate counsel properly informed Plaintiff's counsel that Plaintiff "has no authority to disclose…any company information to any third party" without a non-disclosure agreement. *See* Compl. ¶ 50; Ex. B. That is not a breach of the covenant of good faith and fair dealing. It is an allegation that Ms. Wang and Ms. Fan properly directed corporate counsel,

consistent with their fiduciary duties, to guard TLG's confidential information from disclosure to third parties without proper protection. *See* N.J.S.A. § 42:2C-40(g).

Ultimately, Plaintiff's complaint is that Ms. Wang and Ms. Fan would not buy her out at Plaintiff's inflated price. But, as explained above, Ms. Wang and Ms. Fan were not required to buy Plaintiff out. Ex. A, § XV. And if they elected to do so, they were entitled to do it at a fair price. Indeed, the very statute that forms the basis of Plaintiff's claim is clear that "[a] member does not violate a duty or obligation under this act or under the operating agreement merely because the member's conduct furthers the member's own interest." N.J.S.A. § 42:2C-39(e). Plaintiff's claim fails as a matter of law.

## VI. Count 5 for Breach of Fiduciary Duty Fails Because Plaintiff Fails to Adequately Allege a Breach.

"Under New Jersey law, in order to establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) the defendant had a duty to the plaintiff; (2) the duty was breached; (3) injury to the plaintiff occurred as a result of the breach; and (4) the defendant caused that injury." *Namerow*, 218 A.3d at 846.

Paragraphs 93-94 of Count 5 repeat the allegations in Count 4, which are addressed in Section V above. Paragraphs 96-97 pertain only to corporate counsel at Katsky Korins LLP. Therefore, the only allegation of breach of fiduciary duty that has not already been addressed is Plaintiff's claim that "upon information and belief, Wang and Fan have taken, or are planning to take, steps to devalue or dissolve TLG

solely in an effort to harm" Plaintiff. Compl. ¶ 95.

To the contrary, the only member of TLG who has taken any steps to devalue or dissolve TLG is Plaintiff. Indeed, the default remedy in her oppression claim in Count 2 is dissolution. Plaintiff also made a slew of false allegations about "human resources issues" that allegedly "exposed TLG to potential liability" (Compl. ¶ 30), and she disclosed confidential legal advice in her publicly filed Complaint with no authority to waive TLG's attorney-client privilege. *Id*. ¶ 28; *supra* Section IV. If anyone is taking steps to devalue TLG, it is *Plaintiff*.

More to the point, Plaintiff's out-of-nowhere allegation that "upon information and belief, Wang and Fan have taken, or are planning to take, steps to devalue or dissolve TLG solely in an effort to harm" Plaintiff (Compl. ¶ 95), is implausible on its face as doing so would harm Ms. Wang and Ms. Fan collectively far more than Plaintiff. It is also not plead with adequate particularity and provides insufficient notice to Ms. Wang and Ms. Fan of their alleged breach. *Twombly*, 550 U.S. at 555. This allegation is devoid of any factual enhancement or context and is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" that lacks plausibility. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Again, Plaintiff fails to offer even basic details.

Finally, "[t]here is no valid claim for breach of fiduciary duty based on members in a member-managed company acting in conformity with the provisions

clearly set forth in the Agreement." *Namerow*, 218 A.3d at 847. That is all Plaintiff has alleged and her claim fails for that reason.

**VII.    Count 6 for Civil Conspiracy/Aiding and Abetting Oppression and Breach of Fiduciary Duty Fails Because Plaintiff Fails to Allege an Agreement or Any Wrongful Conduct, and the Intra-Corporate Conspiracy Doctrine Precludes Liability Here.**

"In New Jersey, a civil conspiracy is a combination of **two or more persons** acting in concert to commit an **unlawful act**, or to commit a lawful act by **unlawful means**, the **principal element** of which is an **agreement** between the parties to **inflict a wrong against or injury upon another**, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (emphasis added).[19]

*First*, Plaintiff fails the basic requirement of alleging an actual agreement among the Defendants. There is no allegation of any agreement, or any facts supporting an allegation of an agreement, until Paragraphs 102 and 103 of the Complaint. There, Plaintiff alleges "an illicit agreement to inflict a wrong against" Plaintiff, and that the Defendants "understood the objectives of the scheme, accepted them and agreed, either implicitly or explicitly, to do his, her or its part to further them." Compl. ¶¶ 102-03. Plaintiff merely recites boilerplate language from case

---

[19] The aiding and abetting claim is alleged only against the "KK Defendants" and John Does (1-10), not Ms. Wang and Ms. Fan. *See* Compl. ¶¶ 99-105.

law concerning the required element of an agreement for a conspiracy,[20] but she fails entirely to plead any facts supporting that such an agreement existed. Indeed, there is no mention of any such agreement outside of Paragraphs 102 and 103 of the Complaint. That is insufficient as a matter of law. *See, e.g.*, *Cudjoe v. Ventures Trust 2013 I-H-R by MCM Capital Partners, LLLP*, 2019 WL 2118813, *5 (D.N.J. 2019) ("[A] bare assertion of conspiracy will not suffice"); *Harris v. Fein, Such, Kahn & Shepard*, 2021 WL 211050, *6 (D.N.J. 2021) ("Absent any allegations substantiating [Plaintiff's] generalized [conspiracy claims], Plaintiff's…claim[s] do not pass muster under Rule 8's…pleading standards."); *Jubelt v. United N. Bankers, Ltd.*, No. 13-cv-7150 (ES), 2015 WL 3970227, at *14 (D.N.J. June 30, 2015) ("Plaintiff has not alleged any agreement-or even any communication-between any Defendants regarding a scheme to defraud Plaintiff.").

At most, Plaintiff misconstrues the Defendants' each working to uphold the Operating Agreement and protect TLG's interests as an agreement or concerted effort to cause her harm. Plaintiff merely alleges commonality among the Defendants to abide by the governing document of TLG and guard TLG's interests. This falls far short of alleging an illicit agreement to cause harm to Plaintiff. *See,*

---

[20]    *See, e.g.*, *Banco Popular*, 876 A.2d at 263 (2005) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)) ("It is enough [for liability] if you *understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them*") (italics added).

*e.g.*, *Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir.1984) (no conspiracy between corporation and its counsel, where "it is clear from the record that the actions of [the corporation's] attorneys were motivated not by personal concerns but by concerns for their clients.").

<u>Second</u>, the conspiracy claim necessarily fails because, as argued extensively above and below, *none* of the conduct alleged by Plaintiff is unlawful, wrongful, or actionable. *See Davis v. Fein Such Kahn & Shepard PC*, 2019 WL 1789471, *10 (D.N.J. 2019) (civil conspiracy claim failed where plaintiff failed to plausibly plead any of her other claims because conspiracy is not actionable absent an independent wrong); *Sunkett v. Misci*, 183 F. Supp. 2d 691, 722 (D.N.J. 2002) ("no claim" for civil conspiracy under New Jersey law "in the absence of an underlying wrong").

<u>Third</u>, the intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claim because Ms. Wang and Ms. Fan were agents of TLG, whose conduct is attributed to TLG, which cannot conspire with itself as a matter of law. The U.S. Supreme Court has described the intra-corporate conspiracy doctrine as follows:

> [T]here is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity…Under this principle – sometimes called the intracorporate-conspiracy doctrine – an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy…When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then

> follows that there has not been an agreement between two
> or more separate people.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). New Jersey courts similarly recognize that a corporation, which acts through authorized agents and employees, cannot conspire with itself. *See Exxon Corp. v. Wagner*, 382 A.2d 45, 48 (App. Div. 1977) ("There can be no such…conspiracy by a corporation…with its own officers, agents or employees, who are performing their usual job of formulating and carrying out its managerial policy."). Further, officers of a company "acting within the scope of their employment cannot conspire together." *Sunkett,* 183 F. Supp. 2d at 722 (addressing civil conspiracy claim under New Jersey law); *Johnston v. Baker*, 445 F.2d 424, 427 (3rd Cir. 1974) ("[I]t is the general rule that the acts of the agent are the acts of the corporation."). As this Court explained in *Sunkett*, "[t]the rationale for this rule is simple: 'If Agent A and Agent B both act together to employ power that they wield only as a result of their service to Principal A, there is, in truth, only one actor, Principal A.'" *Sunkett*, 183 F. Supp 2d at 722; *see also Howmedica Osteonics Corp.*, 2012 WL 5554543, at *16  (granting summary judgment as to civil conspiracy against two corporate officers "based on the general rule that officers of a corporation cannot conspire with their employer").

The only recognized exception to this doctrine, inapplicable here, is where employees or agents have acted for their *sole* personal benefit and thus outside the course and scope of their employment. *Heffernan v. Hunter*, 189 F.3d 405, 412 (3d

Cir. 1999); *Fraidin v. Weitzman*, 611 A.2d 1046, 1077–80 (1992). Here, however, the Complaint fails to plausibly allege Ms. Wang and Ms. Fan ever acted for their *sole* personal benefit (separate and apart from the benefit of TLG) or outside the course and scope of their roles as managing members of TLG. As explained above, Plaintiff's claims are all either expressly barred by the Operating Agreement or New Jersey law. The Complaint amounts to an allegation that Ms. Wang and Ms. Fan ran TLG in accordance with the Operating Agreement. And, in any case, "[a] member does not violate a duty or obligation under this act or under the operating agreement merely because the member's conduct furthers the member's own interest," in addition to the LLC's interest. N.J.S.A. § 42:2C-39(e). As such, this exception does not apply, and the intra-corporate conspiracy doctrine bars Plaintiff's claim of civil conspiracy. *See Howmedica Osteonics Corp.*, 2012 WL 5554543, at *16.

### VIII.    Count 8 for Intentional Infliction of Emotional Distress Fails Because Plaintiff Does Not Allege "Extreme and Outrageous" Conduct, Nor Does She Adequately Allege Damages.

Plaintiff's claim for intentional infliction of emotional distress should be dismissed because the Complaint fails to adequately allege Ms. Wang's and Ms. Fan's conduct was "extreme and outrageous," as required under New Jersey law. *Gok v. Ports Am., Inc.*, No. 15-cv-3468 (SRC), 2015 WL 4915518, at *4 (D.N.J. Aug. 17, 2015) (citing *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988)). The intentional infliction of emotional distress claim also should be

dismissed because the Complaint is devoid of any information related to the emotional impact allegedly suffered by Plaintiff because of Ms. Wang's and Ms. Fan's conduct.

While New Jersey recognizes claims for intentional infliction of emotional distress in limited circumstances, there is an "elevated threshold for liability and damages that is only satisfied in extreme cases." *Hitchens v. Aptium Oncology, Inc.*, No. 10-cv-571 (SDW), 2012 WL 570344, at *10 (D.N.J. Feb. 21, 2012) (quoting *Griffen v. Tops Appliance City, Inc.*, 766 A.2d 292, 296 (2001). To adequately plead a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions were the proximate cause of the plaintiff's distress; and (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable man could be expected to endure it." *Buckley*, 544 A.2d at 863. The entirety of Plaintiff's claim is based on a parroted recitation of the elements outlined in *Buckley*. (*See* Compl. ¶¶ 111-116). Without more, Plaintiff is impermissibly pleading legal conclusions in lieu of factual allegations. As the Supreme Court stated in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." *Iqbal*, 556 U.S. at 678.

Plaintiff has failed to plausibly allege Ms. Wang's and Ms. Fan's conduct was

"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *White v. Smiths Detection, Inc.*, No. 10-cv-4078 (SRC), 2010 WL 4269424, at *4 (D.N.J. Oct. 22, 2010) (*quoting Buckley*, 544 A.2d at 857). Rather, Plaintiff alleges that Ms. Wang and Ms. Fan "[a]rmed with knowledge of [Plaintiff's] serious health concerns" – which Plaintiff never identifies – "have engaged in extreme and outrageous conduct." Compl. ¶ 111. Plaintiff alleges that "extreme and outrageous conduct" amounts to the following: (1) making "working together in TLG difficult and emotionally taxing"; and (2) Ms. Wang having "been insulting, condescending and rude throughout the parties' dealings." Compl. ¶¶ 112-113. Plaintiff seems to allege that running TLG in accordance with its Operating Agreement and Ms. Wang's alleged statement that Plaintiff "will never get a salary" (despite Plaintiff's acknowledgment that she agreed to forego a salary) is somehow extreme and outrageous. Compl. ¶¶ 17, 23. Plaintiff cannot transform pedestrian and entirely proper conduct into a claim for intentional infliction of emotional distress.

Even if this Court were to accept Plaintiff's allegations as true, those allegations are facially insufficient to support a claim for intentional infliction of emotional distress. "Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Fogarty v. Household Fin. Corp. III*, No. 14-cv-4525 (RBK), 2015 WL 852071, at *16 n.19 (D.N.J. Feb.

25, 2015) (citing *49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.*, 547 A.2d 1134, 1145 (N.J. Super. Ct. App. Div. 1988). Plaintiff's burden of proof is great as "the limited scope of the tort tolerates many kinds of unjust, unfair and unkind conduct." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991) (quoting *Cautilli v. G.A.F. Corp.*, 531 F.Supp. 71, 74 (E.D.   Pa.   1982) (applying New Jersey law)). *See, e.g.*, *Taylor v. Metzger*, 706 A.2d 685, 693-701 (1998) (finding intentional infliction of emotional distress where a county sheriff used an abhorrent racial slur to refer to an African-American employee); *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1104, 1115-1116 (2009) (finding intentional infliction of emotional distress where defendant falsely reported a teacher threatened to kill her students, and arranged to have the teacher removed publicly from the school in retaliation for refusing defendant's sexual advances); *Sheva Gardens, Inc.*, 547 A.2d 1137-1138, 1142, 1145-48 (finding intentional infliction of emotional distress where landlord intentionally shut off heat and running water in a rental building to induce the tenants to vacate). Considering the case law on what rises to the level of "extreme and outrageous," Plaintiff's intentional infliction of emotional distress claim should be dismissed because the allegations against Ms. Wang and Ms. Fan do not even come close to what is required to state a claim.

Plaintiff's claim separately fails because she fails to explain the nature of her emotional distress and how or why exactly "no reasonable [person] could be

expected to endure it." *Buckley*, 544 A.2d at 863. The Complaint merely alleges that "the distress caused by Defendants has been so severe that it could be expected by any reasonable person to adversely affect [Plaintiff's] mental health and to exacerbate her existing health issues." Compl. ¶ 110. It is not sufficient, however, "for a party to merely assert that he or she has suffered distress, or even to describe symptoms such as aggravation, headaches, or difficulty sleeping." *Farrow v. Cape May Cnty. Corr. Ctr.*, No. 12-cv-1105 (RBK), 2014 WL 793324, at *4 (D.N.J. Feb. 26, 2014) (citing *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292 (N.J. Super. Ct. App. Div. 2001). Plaintiff does not explain how Ms. Wang's and Ms. Fan's purported conduct has affected her mental health, whether she sought treatment, and, if so, for what condition. Nor does she specify how her health condition (whatever it is, as the Court is left to guess) has been exacerbated. It is unclear whether Plaintiff's health concerns are mental or physical in nature or even how, when, or why they started – much less how Ms. Wang's and Ms. Fan's conduct has contributed to her distress. *See* Compl. ¶¶ 31-32, 36, 42. Because Plaintiff has failed to plead facts suggesting Ms. Wang's and Ms. Fan's conduct was "extreme and outrageous," or that Plaintiff has experienced severe emotional distress, the intentional infliction of emotional distress claim should be dismissed with prejudice.

## CONCLUSION

The Court should dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

**CHIESA SHAHINIAN & GIANTOMASI, P.C.**

/s/ Adam K. Derman
By:  Adam K. Derman, Esq.
Jeanelly Nuñez, Esq.
105 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 530-2027
aderman@csglaw.com
jnunez@csglaw.com

AND

**TODD & WELD, LLP**

/s/ Joseph M. Cacace
By:  Howard M. Cooper, Esq.
Joseph M. Cacace, Esq.
Gregory Browne, Esq.
*Pro hac vice*
One Federal Street
Boston, Massachusetts 02110
(617) 720-2626
hcooper@toddweld.com
jcacace@toddweld.com
gbrowne@toddweld.com

*Attorneys for Defendants Lei Wang and Helena Fan*

June 16, 2023