## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSEPHINE SHUI,<br><br>Plaintiff,<br><br>v.<br><br>LEI WANG, HENGCHUN "HELENA" FAN, MERYL L. UNGER, ESQ., THOMAS M. LOPEZ, ESQ., KATSKY KORINS LLP and JOHN DOES (1-10),<br><br>Defendants. | **Civil Action No. 23-2620 (SRC)**<br><br>**OPINION** |

**CHESLER**, District Judge

This matter comes before the Court on a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants Lei Wang ("Wang") and Hengchun "Helena" Fan ("Fan") (collectively, "Individual Defendants") as well as a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants Meryl L. Unger, Esq. ("Unger"), Thomas M. Lopez, Esq. ("Lopez"), and Katsky Korins LLP ("Katsky Korins") (collectively, "Law Firm Defendants"). Plaintiff Josephine Shui ("Plaintiff" or "Shui") also cross-moves for leave to file a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). The Court heard oral argument on these motions on August 16, 2023.

For the reasons that follow, the Individual Defendants' and Law Firm Defendants' motions to dismiss are granted and Plaintiff's motion for leave to amend is denied.

I

This dispute arises from Plaintiff's attempt to separate herself from the business she founded with defendants Wang and Fan.[1] Shui, Wang, and Fan founded The Lotus Group ("TLG") as a New Jersey limited liability company in January 2013 with ownership divided between the three women—Wang owns 51%, Shui owns 37%, and Fan owns 12%. TLG is a boutique employment agency and recruiting firm focusing primarily on temporary and permanent placements in the biometrics field. Shui, Wang, and Fan entered into the Operating Agreement on May 1, 2013; the Operating Agreement was amended in June 2018. See Exhibit A to Individual Defendants' Motion to Dismiss (ECF No. 22-3) (hereinafter "Operating Agreement"). The Operating Agreement contains two provisions particularly relevant to the instant motions. Section XV addresses the withdrawal of a member by sale or transfer of the member's interest in TLG:

> Any member who shall be desirous of selling or transferring their share and interest in the Company shall give the right of first refusal to purchase said share and interest at the same price as being offered by a bona fide and qualified buyer to the other members. Should any member be desirous of transferring their shares in the company without consideration, to a third party or withdrawing without a third party offer, the purchase price to the other members shall be as calculated per the provisions of Section XVI of this Operating Agreement. Payment for the selling/withdrawing member's membership shall be made by the purchasing member in equal annual payments over a five year period without interest.

---

[1] Plaintiff has submitted a proposed Second Amended Complaint as an exhibit to her Rule 15(a) motion, see ECF No. 34, and argues that "the newly alleged facts should beconsidered [*sic*] on this motion." Memorandum of Law in Opposition to Individual Defendants' Motion to Dismiss (ECF No. 24) at 2 n.1. Notwithstanding the Court's disposition of Plaintiff's motion for leave to amend, the Court cannot consider the newly alleged facts on the 12(b)(6) motions. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)). The Proposed Second Amended Complaint is legally irrelevant with respect to the motions to dismiss currently before the court. On these motions, the Court can only consider allegations contained within the four corners of the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 674 (2009). The Proposed Second Amended Complaint will be considered, however, in the Court's analysis of Plaintiff's Rule 15(a) motion. See infra Section IV.

2

> All members electing to purchase (other than the selling member), and having the right to purchase, may purchase that percentage of share(s) being sold. The number of shares that can be purchased is calculated by dividing the member's respective percentage of the Company by the total percentage of shares of all members electing to purchase.

Operating Agreement at § XV. Section IX of the Operating Agreement espouses the members' decision to forego salaries:

> With the exception of commissions which shall be governed by a separate writing, no member shall be separately compensated on a salaried basis for service performed in carrying out the operation of the Company. No salaries or individual compensation shall be otherwise payable, without consent of the Company, for the normal management, although the Company may from time to time employ one or more managers or other representatives at a designated salary.

Operating Agreement at § IX. Shui, Wang, and Fan divided recruitment, client development, operations, and management responsibilities amongst themselves but relied solely on commissions and distributions from the business for income. Complaint (ECF No. 1-1) at ¶ 18 (hereinafter "Compl.").

TLG was quite successful. The company had a lucrative business from shortly after its inception and experienced "tremendous year-after-year growth in the company's revenue and profits." Compl. ¶ 20-21, 34. Nonetheless, Plaintiff became dissatisfied with internal affairs. She alleges that many administrative and managerial tasks fell to her, thus decreasing her ability to earn a commission and increasing her tax liability. Id. at ¶ 23-24. She alleges that the June 2018 amendment was a compromise regarding the terms of the buy-out provision after Wang vetoed advice to receive regular valuations of the company. Id. at ¶ 28. She alleges that "various human resources issues" developed, as well. Id. at ¶ 30. And, she alleges that Wang "unilaterally" decided to engage the Lawyer Defendants as company counsel for TLG. Id. at 32-33. All of these factors, plus a "serious health setback" in June 2021, led Plaintiff to approach Wang and Fan in February

2022 with a request to "develop a plan for her exit within the next year or so in the hopes of accomplishing an amicable withdrawal." Id. at ¶¶ 31, 35.

Wang and Fan made an offer to purchase Plaintiff's share of TLG which Plaintiff describes as "insultingly lowball." Compl. ¶ 36. On January 17, 2023, Plaintiff invoked Section XV of the Operating Agreement, which she read to contain a right to withdrawal-by-sale held by the departing member rather than a right of first refusal held by the remaining members. Id. at ¶ 37. The Law Firm Defendants, in their capacity as company counsel for TLG, initiated the appraisal process described in Section XV. Id. at ¶ 40; see also Exhibit C to Individual Defendants' Motion to Dismiss (ECF No. 22-5). Plaintiff asserts that this commencement of the appraisal process was, in fact, an agreement to buy her share of TLG and that Wang and Fan later repudiated the agreement via their counsel. Compl. ¶ 41. Additionally, Plaintiff alleges that the Individual Defendants and the Law Firm Defendants took several actions to effectively freeze her out of TLG, despite the fact that the sale of her stake in the business has not been consummated and she was still a member of the LLC. These actions included cutting off her access to bank and administrative records, denying her access to communications between the Law Firm Defendants and TLG, and ceasing efforts to sell TLG to a third-party buyer in an effort to force Plaintiff to accept the "lowball" offer. Id. at ¶¶ 41-49. Finally, Plaintiff alleges that the Law Firm Defendants have taken several actions to interfere with her rights as a member of TLG and her ability to sell her share in the company, including, most notably, by prohibiting her from disclosing information about the company to third parties. Id. at ¶ 50.

Plaintiff commenced this action in the Superior Court of New Jersey, Morris County on March 17, 2023. Defendants jointly filed their Notice of Removal on May 15, 2023, invoking this Court's removal jurisdiction under 28 U.S.C. § 1441(a) and (b) and original jurisdiction under 28

4

U.S.C. § 1332(a)(1). The Law Firm Defendants moved to dismiss on June 5, 2023, Plaintiff opposed the motion and filed a cross-motion for leave to file a Second Amended Complaint on July 3, 2023, and the Law Firm Defendants filed their reply and opposition to the cross-motion on July 31, 2023. The Individual Defendants moved to dismiss on June 16, 2023, Plaintiff opposed the motion on July 3, 2023, and the Individual Defendants replied on July 28, 2023. The Court heard oral argument on all three motions on August 16, 2023.

## II

The Individual Defendants move to dismiss all eight counts of the Complaint: (1) breach of contract, (2) oppression, (3) direct action to enforce rights as an LLC member, (4) breach of the statutory standard of conduct for members of an LLC, (5) breach of fiduciary duty, (6) civil conspiracy, (7) breach of the covenant of good faith and fair dealing, and (8) intentional infliction of emotional distress. The Law Firm Defendants move to dismiss the four counts pled against them: Counts Three, Five, Six, and Eight.

To withstand a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."). The issue before the Court on a Rule 12(b)(6) motion to dismiss "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A district court ruling on a motion to dismiss generally "may not consider matters extraneous to the pleadings." Id. at 1426. However, the court may properly consider documents that form the basis of a claim and documents that are "integral to or explicitly relied upon in the complaint." Id. (citations omitted).

## A

Plaintiff asserts that the Operating Agreement provides a withdrawal-by-sale provision, whereby a withdrawing member can force the remaining members to purchase her shares at a price set by an appraisal, rather than a right of first refusal, whereby a withdrawing member must offer to sell her shares to the remaining member before seeking third-party buyers. She argues that the Member Defendants breached the Operating Agreement by failing to acknowledge her right to initiate the withdrawal-by-sale process. A cause of action for breach of contract under New Jersey law requires that (1) the parties entered into a contract, (2) the plaintiff performed under the contract, (3) the defendant did not perform under the contract, and (4) the defendant's nonperformance caused damages to the plaintiff. Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006); Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016). "It is well settled that courts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." In re County of Atlantic, 230 N.J. 237, 254 (2017) (internal citations and quotations omitted). Where the contract's plain meaning is clear and unambiguous, "there is no room for interpretation or construction and the courts must enforce

those terms as written." <u>Namerow v. PediatriCare Assocs., LLC</u>, 461 N.J. Super. 133, 140 (N.J. Super. Ct. Ch. Div. 2018).

Plaintiff's reading of the contract is incorrect: no reasonable interpretation of Section XV of the Operating Agreement could create anything more than a right of first refusal. <u>See</u> Exhibit A to Individual Defendants' Motion to Dismiss (ECF No. 22-3), at 10-11. The first sentence of the Section states that the other LLC members retain the right of first refusal when the departing member seeks to sell their share. The second sentence clarifies that, even if the departing member seeks to transfer their share for no consideration, the remaining members still retain the right of first refusal. Further language in Section XV supports that these initial sentences establish merely a right, rather than an obligation, to purchase the departing member's shares; the provision speaks in unambiguously permissive, rather than mandatory, terms (e.g. "[a]ll members <u>electing</u> to purchase" and "[u]nless offer to the balance of the membership <u>and such offer is rejected</u>" (emphasis added)). By default, a right of first refusal is a "conditional <u>option</u>," not a mandate. <u>Creque v. Texaco Antilles, Ltd.</u>, 409 F.3d 150, 152 (3d Cir. 2005) (emphasis added). A right of first refusal that is, in fact, mandatory would be such an extreme departure from standard contractual practice that the Court would expect to find unambiguous textual evidence that the parties intended to include this procedure in the contract. Had Plaintiff wanted the Operating Agreement to contain a mandatory sale provision, she could have bargained for such a term's inclusion in the contract, but as written and signed, the contract unambiguously lacks such a term. The Court cannot "remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of another." <u>Karl's Sales & Service, Inc. v. Gimbel Bros., Inc.</u>, 249 N.J. Super. 487, 592 (App. Div. 1991). Because the

contract does not contain a mandatory sale provision, the Individual Defendants could not have breached it by refusing to purchase Plaintiff's share of TLG.

Plaintiff also argues that, putting aside whether Section XV created a mandatory sale provision, company counsel's indication that the appraisal process would commence constituted an invocation of the right of first refusal under Section XV and thus an acceptance of Plaintiff's offer to withdraw. This is flatly incorrect. "A contract arises from offer and acceptance," and "if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). "[U]nqualified acceptance" is required "to conclude the manifestation of assent." Id. (quoting Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 539 (1953)). Plaintiff points to two communications as constituting the manifestation of mutual assent: (1) Wang and Fan's offer to Shui and (2) an email exchange between Shui's counsel and company counsel on January 24, 2023. See Compl. ¶ 36; Exhibit C to Individual Defendants' Motion to Dismiss (ECF No. 22-5). As to the first, Wang and Fan's offer clearly was not accepted, elsewise this litigation would not have proceeded. As to the second, company counsel's representation that the appraisal process would commence can in no way constitute an acceptance on behalf of Wang and Fan of Plaintiff's offer to withdraw. Contract law envisions some situations where performance constitutes acceptance, see Restatement (Second) of Contracts § 50(2) cmt. b (Am. L. Inst. 1981), but that cannot be the case here, where the alleged performance was done by company counsel rather than the parties to whom the offer was made and in whom the power of acceptance resided.

Accepting as true the facts presented in the complaint, Plaintiff has not stated a claim for breach of contract against the Individual Defendants. Count One will therefore be dismissed.

**B**

Plaintiff also makes several tort claims related to her attempts to sell her interest in TLG. All seven fail to state a claim upon which relief can be granted and will be dismissed.

**1**

The economic loss doctrine prevents plaintiffs "from recovering in tort economic losses to which their entitlement flows only from a contract." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002). In other words, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 280 (2002). Under New Jersey law, while "a tort action is separate and distinct from a contract action, the boundary line between tort and contract actions is not capable of clear demarcation." Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 245 (3d Cir. 2010) (citing Huck v. Gabriel Realty, 136 N.J. Super. 468, 474 (N.J. Super. Ct. Law Div. 1975); New Mea Constr. Co. v. Harper, 203 N.J. Super. 486, 493 (N.J Super. Ct. Law Div. 1985) (internal quotations omitted)). However, New Jersey law is clear that "[o]nly tort claims asserting the defendant breached a duty owed to the plaintiff independent of the contractual duties may be alleged alongside a breach of contract claim." Red Hawk Fire & Security, LLC v. Siemens Indus., Inc., 449 F. Supp. 3d 449, 462 (D.N.J. 2020).[2]

---

[2] Many exceptions to the economic loss doctrine exist. See, e.g., People Express Airlines v. Consol. Rail Corp., 100 N.J. 246, 249-50 (1985) (economic loss doctrine is not a bar to recovery where the injured party would otherwise have no remedy against the defendant); Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316-17 (2002) (describing the independent duty exception to the economic loss doctrine). Plaintiff does not address any of these exceptions in her opposition briefing but rather argues that the doctrine is not applicable at all since her injuries do not flow from entitlements contained within the Operating Agreement. In any event, neither exception applies because the parties are in privity of contract and because, as sophisticated commercial entities, there is no special relationship between the parties from which a heightened duty would flow.

The economic loss doctrine bars at least Counts Two through Seven. Each of these claims asserts a right that flows from the Operating Agreement—in other words, "the underlying facts are not separate and distinct between the tort action and the contract action." Howmedica Osteonics Corp. v. Zimmer, Inc., No. 11-1857, 2012 WL 5554543, at *4 (D.N.J. Nov. 14, 2012). Count Two asserts that Wang and Fan's conduct is inconsistent with the Operating Agreement. Compl. ¶ 75. Counts Four, Five, and Seven hinge on statutory standards applicable to limited liability companies, so the contract that governs the existence of the LLC governs the obligations between the parties and, by extension, the duties that each party to that contract owe each other. Id. at ¶ 85.[3] Counts Three and Six refer to alleged "rights" retained by Plaintiff which are defined by the Operating Agreement. Id. at ¶¶ 80-81, 99. None of these claims derive from a duty "independent of the contractual duties," and therefore none "may be alleged alongside a breach of contract claim." Red Hawk Fire & Security, 449 F. Supp. 3d at 462.

## 2

Even notwithstanding the application of the economic loss doctrine, Counts Two through Seven fail to state a claim upon which relief can be granted.

Count Two fails because Plaintiff does not allege how Wang and Fan's conduct rises to the level of shareholder oppression. "Oppression has been defined as frustrating a shareholder's reasonable expectations." Brenner v. Berkowitz, 134 N.J. 488, 506 (1993). This is a "high bar" that is only met after the court "evaluate[s] the LLC member's conduct relating to the LLC" and "assess[es] whether the LLC can be managed notwithstanding that conduct[.]" IE Test, LLC v.

---

[3] By its very nature, the implied covenant of good faith and fair dealing sounds in contract, and a claim alleging breach of the covenant "is not actionable in tort." Skypala v. Mortgage Electronic Registration Sys., Inc., 655 F. Supp. 2d 451, 460 (D.N.J. 2009); see N.J. Stat. Ann. § 42:2C-39(d) ("A member shall discharge the duties under this act or under the operating agreement and exercise any rights consistently with the contractual obligation of good faith and fair dealing.").

Carroll, 226 N.J. 166, 183 (2016). The New Jersey Revised Uniform Limited Liability Company Act mandates that "[a] limited liability company is dissolved, and its activities shall be wound up . . . on application by a member, the entry by the Superior Court of an order dissolving the company on the grounds that . . . (b) it is not reasonably practicable to carry on the company's activities in conformity with one or both of the certificate of formation and the operating agreement[.]" N.J. Stat. Ann. 42:2C-48(a)((4)(b). To begin with, Plaintiff does not seek dissolution of TLG, despite this being the only remedy contemplated by the statute. See id.; see also Compl. at ¶ 111 (detailing Plaintiff's requested relief). Beyond this, Plaintiff pleads no facts to suggest that the continued operation of TLG in conformance with the Operating Agreement would be impracticable. At most, Plaintiff offers vague allegations that the Individual Defendants "have acted and are acting in a manner that is illegal, including with respect to the handling of various human resources matters." Id. at ¶ 81. Neither this assertion nor the other generalized assertions that the Individual Defendants operated in an oppressive manner despite conducting themselves according to the Operating Agreement are sufficient to withstand a 12(b)(6) motion. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Count Three fails because Plaintiff has not properly pled a claim under N.J. Stat. Ann. § 42:2C-67. That statute provides for individual members of an LLC to bring a direct action against other LLC members "to enforce the member's rights and otherwise protect the member's interests, including rights and interests under the operating agreement or this act or arising independently of the membership relationship." Id. at § 42:2C-67(a). Plaintiff asserts that the Individual Defendants and the Lawyer Defendants violated two of her "rights and interests under the operating agreement": first, her right to inspect the books and records of TLG as an LLC member, and

second, her right to access privileged communications between TLG and its corporate counsel. Compl. ¶¶ 80-81. As to the first, while Plaintiff is correct that she has a statutory right to access certain information about TLG, see N.J. Stat. Ann. 42:2C-40(a)(1) and (2), the statute also blesses "reasonable restrictions and conditions on access to and use of information to be furnished under this section, including designating information confidential and imposing nondisclosure and safeguarding obligations on the recipient." Id. at 42:2C-40(g). Plaintiff argues that conditioning the provision of company information on the signature of a nondisclosure agreement was unreasonable. Plaintiff's Opposition to Individual Defendants' Motion to Dismiss (ECF No. 24) at 26. But Plaintiff offers no support for her suggestion that the signing of a nondisclosure agreement—expressly contemplated in Section 42:2C-40(g) (". . . including designating information confidential and imposing nondisclosure and safeguarding obligations on the recipient . . .")—is not a "reasonable restriction." On the contrary, beyond the explicit statutory authorization for their use, nondisclosure agreements are pervasive in the realm of corporate transactions. A finding that their use is unreasonable would upend much of transactional law. As to the second, particularly relevant with respect to Plaintiff's claims against the Law Firm Defendants, Plaintiff is clearly outside the litigation control group and is therefore not entitled to communications between TLG and its company counsel. The New Jersey Rules of Professional Conduct define the "litigation control group" as "current agents and employees responsible for, or significantly involved in, the determination of the organization's legal position . . . ." N.J. R. Prof. C. 1.13(a). "Significant involvement" is not a completely settled legal standard. See, e.g., Andrews v. Goodyear Tire & Rubber Co., 191 F.R.D. 59, 59 (D.N.J. 2000); Michaels v. Woodland, 988 F. Supp. 468, 471 (D.N.J. 1997). However, this case is not a close one: Plaintiff, as the party who instigated the litigation, is not "significantly involved in[] the determination of the organization's

legal position" with respect to this lawsuit—quite the opposite. N.J. R. Prof. C. 1.13(a). She has no plausible entitlement to communications between TLG and its company counsel.

Counts Four, Five, and Seven fail to allege sufficient factual allegations to state a plausible basis upon which relief can be granted for breach of the statutory standards of conduct for members of an LLC, fiduciary duty, or the duty of good faith and fair dealing. The statutory standard of conduct contemplated by the Revised Uniform Limited Liability Company Act is "to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or knowing violations of the law." N.J. Stat. Ann. § 42:2C-39(c). The fiduciary duties owed by one LLC member to another include duties to account, duties to refrain from dealing as an adverse party to the company, and duties to refrain from competing with the company. Id. at § 42:2C-39(b). The same section requires LLC members to "discharge the duties under this act or under the operating agreement and exercise any rights consistently with the contractual obligation of good faith and fair dealing." Id. at § 42:2C-39(d). New Jersey contract law, in turn, defines the contractual duty of good faith and fair dealing as an "implied covenant that each party will perform its obligations in good faith, will act fairly and will refrain from actions which will destroy the 'fruits of the contract' for its contracting partner." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 414 (1997) (quoting Sons of Thunder, Inc. v. Borden, 285 N.J. Super 27, 88-89 (App. Div. 1995)). All three of these counts center on the same, basic allegations: that Plaintiff was wronged by "various human resources matters," Compl. ¶ 81, that the Individual Defendants (by and through their attorneys, the Law Firm Defendants) prevented Plaintiff from selling her share of TLG to third parties by restricting her ability to disclose information, id. at ¶ 108, that Wang and Fan were taking steps to "devalue or dissolve TLG solely in an effort to harm" Plaintiff, id. at ¶ 95, and that the Individual Defendants refused to buy out Plaintiff pursuant to Section XV of the Operating Agreement, see

supra, Section II(A). None of these allegations progress beyond "unadorned, the defendant-unlawfully-harmed-me accusations[s]." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Viewed in the light most favorable to Plaintiff, the conduct alleged here amounts to, at worst, hardball negotiating tactics within the bounds contemplated by the Operating Agreement—not violations of the standards articulated in the Revised Uniform Limited Liability Company Act. Unfortunate though this conduct might be with respect to Plaintiff's interpersonal relationships with Wang and Fan, none of it meets the bar for a plausible claim for relief.

Finally, Count Six is barred by the intra-corporate conspiracy doctrine. "[T]here is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity." Ziglar v. Abbasi, 582 U.S. 120, 153 (2017) (citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769-71 (1984)). "When the officers of a corporation are acting in their corporate capacity, they cannot conspire with the corporation alone." Sunkett v. Misci, 183 F. Supp. 2d 691, 722 (D.N.J. 2002); accord Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313-14 (3d Cir. 2003) ("[A]n entity cannot conspire with one who acts as its agent."). The doctrine applies with equal force to limited liability companies. See, e.g., United States v. Wavefront, LLC, No. 20-5094, 2021 WL 37539 (D.N.J. Jan. 5, 2021). A civil conspiracy claim against corporate officers can avoid the doctrine where the officers acted for their "sole personal benefit and thus outside the scope of their employment." Heffernan v. Hunter, 189 F.3d 405, 412 (3d Cir. 1999). Wang and Fan acted at all times within their capacities as offers of TLG and for the benefit of the company. At most, Plaintiff's allegations amount to Wang and Fan aggressively pursuing the interests of TLG by protecting its confidential information and seeking the best price at which Shui's shares might be purchased. To the extent Plaintiff argues that Wang and Fan's actions were in their personal benefit so as to avoid the intra-

corporate conspiracy bar, Wang and Fan's actions were certainly not for their "*sole* personal benefit." Heffernan, 189 F.3d at 412 (emphasis added). Even if the aforementioned actions were taken with an eye towards some personal benefit, they were undoubtedly pursued to protect TLG's financial and informational interests. As recognized by statute, "[a] member does not violate a duty or obligation under this act or under the operating agreement merely because the member's conduct furthers the member's own interest." N.J. Stat. Ann. § 42:2C-39(e).

Counts Two through Seven will therefore be dismissed.

### 3

The only tort-based claim that is arguably not barred by the economic loss doctrine is Count Eight. Regardless, Count Eight still fails to state a claim upon which relief can be granted.

A claim for intentional infliction of emotional distress under New Jersey law requires the plaintiff to plead "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Taylor v. Metzger, 152 N.J. 490, 509 (1998). The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Subbe-Hirt, 94 F.3d at 114. Additionally, the plaintiff must show that the defendant "intend[ed] both to do the act and to produce emotional distress." Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366 (1988). On the two critical elements of a claim for intentional infliction of emotional distress—extreme and outrageous conduct and intentionality—plaintiff fails to plead facts that, accepted as true, would state a plausible basis for relief. On the first, Plaintiff alleges that Wang and Fan made working conditions at TLG difficult and stressful and were "insulting, condescending, and rude throughout the parties' dealings." Compl. ¶¶ 106-11. Conduct that has been found to be outrageous, extreme, atrocious, and beyond the bounds of decency in civilized society so as to at

least survive a motion to dismiss includes, for example, the use of a racial epithet by a police officer against a suspect, <u>Lankford v. City of Clifton Police Dep't</u>, 546 F. Supp. 3d 296, 325 (D.N.J. 2021), a suggestion that an employer should perform oral sex on her boss, <u>Wigginton v. Servidio</u>, 324 N.J. Super. 114, 130-32 (App. Div. 1999), and harassment based on an employee's status as a cancer patient. <u>Bishop v. Okidata, Inc.</u>, 864 F. Supp. 416, 428 (D.N.J. 1994). As summarized in her opposition brief, Plaintiff alleges "that all of this stress, conflict and, most importantly, financial hardship was being used to force a sick woman to give in to a lowball buyout offer." Plaintiff's Opposition to Individual Defendant's Motion to Dismiss (ECF No. 24) at 32. No reading of the facts alleged in the Complaint could rise to the requisite level of extreme and outrageous conduct that Plaintiff alleges supports her claim for intentional infliction of emotional distress. Further, Plaintiff cannot demonstrate the requisite intentionality to sustain an intentional infliction of emotional distress claim. The touchstone of intentionality under intentional infliction claims is the abuse of a power dynamic, such as in <u>Lankford</u>, where the racial epithet was used against an arrestee, or <u>Wigginton</u>, where the request for oral sex was made by a superior to an employee. 546 F. Supp. at 325; 324 N.J. Super. at 131. No such dynamic exists here, where Plaintiff and Individual Defendants are all partners in a business venture and the Law Firm Defendants are merely the Individual Defendants' lawyers.

In short, Plaintiff's displeasure at the breakdown of a business arrangement and dissatisfaction with the legal counsel provided to her former business partners cannot sustain a cause of action for intentional infliction of emotional distress. Count Eight will therefore be dismissed.

**III**

The Law Firm Defendants move to dismiss Counts Three, Five, Six, and Eight of the Complaint. At Oral Argument, counsel for Plaintiff conceded that Plaintiff had waived any arguments against dismissal with respect to Counts Three and Five (direct action and breach of fiduciary duty). See Oral Arg. Hr'g Tr. (ECF No. 36) at 10:14-17. With respect to Counts Six and Eight (civil conspiracy and aiding and abetting oppression and breach of fiduciary duty; intentional infliction of emotional distress) the Law Firm Defendants' motion to dismiss will be granted. The Court refers to its reasoning above with respect to Count Eight. See supra Section Section II(B)(3). Some additional explanation is warranted with respect to the claims Plaintiff makes against the Law Firm Defendants in Count Six.

Count Six alleges that the Law Firm Defendants were engaged in a civil conspiracy with the Individual Defendants and that the Law Firm Defendants aided and abetted the Individual Defendants' oppression and breach of fiduciary duty. As with the Individual Defendants' motion, the complaint must contain "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face'" to withstand a motion to dismiss under Rule 12(b)(6). Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations. Iqbal, 556 U.S. at 678.

First, as discussed above, the intra-corporate conspiracy doctrine bars civil conspiracy claims when the alleged conspirators include a corporation and its agents. Ziglar, 582 U.S. at 153;

see supra at Section II(B)(2). An agent can only be held liable for civil conspiracy where the officer was acting for the agent's "sole personal benefit." Gen Refractories Co., 337 F.3d at 313. The doctrine applies with equal force to attorneys acting within the scope of their capacity as agents of the corporation. Id. The application of the intra-corporate conspiracy doctrine to attorneys is "even more compelling" as a policy matter because "[c]ounsels' conduct within the scope of representation is regulated and enforced by disciplinary bodies established by the courts." Heffernan, 189 F.3d at 413. So, to state a claim for civil conspiracy against the Law Firm Defendants, Plaintiff must allege facts that demonstrate the Law Firm Defendants were acting both for their sole personal benefit and outside the scope of their representation. Count Six contains no allegations that meet either requirement. In fact, all of the conduct alleged in the Complaint was undertaken in the Law Firm Defendants' capacity as counsel for TLG. "The right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns." Heffernan, 189 F.3d at 413. The conduct alleged to constitute civil conspiracy here was nothing more than the Law Firm Defendants' efforts at zealous advocacy—clearly done in their capacity as duly retained legal professionals and for the benefit of their clients.

Second, a cause of action for aiding and abetting breach of fiduciary duty under New Jersey law requires the Plaintiff to allege "(1) a breach of fiduciary duty; (2) the defendant's knowledge of and substantial assistance in that breach; and (3) damages resulting from the breach." Wiatt v. Winston & Strawn LLP, 838 F. Supp. 2d 296, 307 (D.N.J. 2012) (citing McCormac v. Qwest Communications Intern., Inc., 387 N.J. Super. 469, 482 (App. Div. 2006) (detailing scienter requirement for aiding and abetting a breach of fiduciary duty)). No New Jersey court has found that company counsel owes a "separate, independent fiduciary duty to [minority shareholders]." Schulman v. Wolff & Samson, P.C., 401 N.J. Super. 467, 478 (App. Div. 2008). Plaintiff's

allegations amount to an assertion that, in their professional capacity as attorneys for TLG, the Law Firm Defendants breached a fiduciary duty that they owed to Plaintiff. The Law Firm Defendants owed her no such duty. A claim for breach of fiduciary duty by a minority shareholder of a closely held corporation against a third party "is a derivative claim, not an individual claim made by a particular shareholder and based upon some particularized fiduciary obligation to that shareholder." Id. (citing Brown v. Brown, 323 N.J. Super. 30, 36 (App. Div. 1999). Because Plaintiff was owed no duty by the Lawyer Defendants and she brings this claim individually and not derivatively, she cannot state a claim for aiding and abetting breach of fiduciary duty.

Third, shareholder oppression is defined by the New Jersey Revised Uniform Limited Liability Company Act as where "the managers or those members in control of the company . . . act[] in a manner that is oppressive and was, is, or will be directly harmful to the applicant." N.J. Stat. Ann. § 42:2C-48(a)(5)(b). The statute does not contemplate remedies against non-members of an LLC, and Plaintiff does not point the Court to any precedent applying Section 42:2C-48(a)(5) to an attorney or any third party. Plaintiff therefore cannot state a claim for aiding and abetting shareholder oppression against the Law Firm Defendants.

Counts Three, Five, Six, and Eight will therefore also be dismissed with respect to the Law Firm Defendants.

## IV

Plaintiff cross-moves for leave to file a Second Amended Complaint. She argues that the Proposed Second Amended Complaint ("PSAC") "bolsters the existing claims, rendering it far from futile." Plaintiff's Opposition to Individual Defendants' Motion to Dismiss (ECF No. 24) at 34. Individual Defendants argue that the proposed amendment is futile because the PSAC "adds nothing meaningful or substantive" and "would still be subject to Ms. Wang and Ms. Fan's

arguments for dismissal." Individual Defendants' Reply and Brief in Opposition to Plaintiff's Motion for Leave to File the Second Amended Complaint (ECF No. 30) at 31.

Leave to amend "should [be] freely give[n] when justice so requires." Fed R. Civ. P. 15(a)(2). The Supreme Court has enumerated several situations that would render permitting amendment to be unjust, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). "Under Third Circuit precedent, a 'futile' amendment is one that fails to state a claim upon which relief could be granted." CBA Environ. Servs., Inc. v. Toll Bros., Inc., 403 F. Supp. 3d 403, 410 (D.N.J. 2019) (citing In re Burlington, 114 F.3d at 1434; Grayson v. Mayview State Hosp., 293 F.3d 103, 113 (3d Cir. 2002)). In determining whether the filing of an amended complaint would be futile, the Court must assess whether the amendment would cure the deficiency under the same standard as a 12(b)(6) motion: whether the complaint, as amended, states a claim upon which relief could be granted. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

Permitting Plaintiff to file the PSAC would indeed be futile because the PSAC fails to state a claim upon which relief could be granted. The additional details do not change the nature of the legal claims pled in the complaint or address the two core deficiencies identified with the Complaint: first, that the Operating Agreement does not contain a mandatory sale provision, and second, that the tort claims are barred by the economic loss doctrine. See supra Section II(A); Section II(B)(1). These allegations failed to state a claim in the Complaint, and they would fail to state a claim in the PSAC. Cf., e.g., State Capital Title & Abstract Co. v. Pappas Business Servs., LLC, 646 F. Supp. 2d 668, 680-81 (D.N.J. 2009) (rejecting futility challenge because proposed

amended complaint included additional details that remedied specific deficiencies in original complaint). None of the additional details in the PSAC cure the critical defects with respect to Plaintiff's claims. They only highlight her dissatisfaction with the business relationship and the manner in which Wang and Fan managed the business. Plaintiff's disagreement with Wang and Fan does not create a basis for any relief under any of the claims in the PSAC. This narrative cannot confer a right to relief when the Operating Agreement does not say what Plaintiff alleges it says and the remaining claims are barred as a matter of law. Plaintiff cannot transform this dissatisfaction into a legal claim extraneous to the contract she signed, and justice does not require her to file the PSAC in an attempt to resuscitate that effort.

Plaintiff's motion for leave to amend will therefore be denied. Additionally, because any further amendments would be futile, Plaintiff's complaint will be dismissed with prejudice and without further leave to amend.

*       *       *

For these reasons, the Individual Defendants' motion to dismiss will be granted, the Law Firm Defendants' motion to dismiss will be granted, and Plaintiff's motion for leave to amend will be denied.

                                          s/Stanley R. Chesler
                                    STANLEY R. CHESLER, U.S.D.J.

Dated: December 8, 2023